ANN CRAWFORD McCLURE, Chief Justice
At issue is a protective order prohibiting Ronnie Martin from, among other things, directly communicating or being within 350 feet of a "protected person" for eight months. The order defined Appellant's soon to be ex-wife and her children as the protected persons. Appellant claims that the evidence fails to support the necessary findings to support the order. We agree with Appellant with respect to the children and reform the order accordingly, and affirm as reformed.
FACTUAL SUMMARY
Appellant was married to Tammy Martin in 2012. She had two daughters by a previous marriage, A.F. and S.F., who lived with the couple. The couple separated on February 21, 2016. On March 22, 2016, Tammy filed an Application for a Protective Order, both for herself and her children, asserting that Appellant engaged in family violence. The trial court granted an ex parte temporary order and set the matter for hearing.
At the hearing, Tammy testified that she separated from Appellant, who is a staff sergeant in the Army, because on his return from a tour in Korea he was "a completely different man." To support her application for a protective order, she described three instances of family violence. Sometime after the couple was first married, she and Appellant were arguing and he slapped her with an open hand across the face. On February 21, 2016, the day the couple separated, Appellant pushed her. She denied the push caused her any injury.
Her primary complaint, however, was an incident on March 21, 2016, when Appellant was at the house. They were arguing and he grabbed the back of her head and pushed her face into the wall. As a result, she sustained a large bruise around her eye. The incident occurred in the morning hours after Tammy had taken the children to school. She believed it happened about 8:30 a.m. or 9:30 a.m., although she did not know the exact time. She had dropped her children off at school and returned to the house at 8:00 a.m. and he had come by soon thereafter. They argued for a time before the actual assault ("it was not very long. 30 minutes maybe"). At the time, Appellant was staying with a friend. The friend did not see him leave that morning, though Appellant usually left between 7:00 and 8:00 a.m. A fellow soldier recalled that *165 Appellant reported for roll call by at least 9:00 a.m. that day. Nothing in the testimony informs us of the driving distance between the friend's house and Tammy's residence, or Tammy's residence and Fort Hood. On direct examination, Appellant never directly denied the incident but did claim that he arrived at work around 8:00 or 8:30 a.m. on March 21. On cross-examination, Appellant at least inferentially denied the incident, by stating he had "no idea" how she got a black eye.
Tammy was also questioned about the prospect for future violence:
[ATTORNEY]: Are you currently in fear of [Appellant]?
[TAMMY]: I am as of now, yeah. I don't want him to come to the property or anything like that or be around him. Yes, sir.
...
[ATTORNEY]: Do you believe if the Court is not to order that protection that there is a likelihood that future violence may occur by his hands on you?
[TAMMY]: I'm not positive, but, I mean, there is a chance.
[ATTORNEY]: Do you believe it to be true knowing Mr. Ronnie Martin?
[TAMMY]: I believe it could happen, yes.
...
[COURT]: Okay. And are you telling me under oath, under penalty of perjury, that you believe that his violence against you is likely to occur again?
[TAMMY]: I would-I can't predict that.
[COURT]: Well, there is a two-prong test for a protective order.
[TAMMY]: Uh-huh.
[COURT]: And that's why I'm asking you these questions.
[TAMMY]: Okay.
[COURT]: You have to testify under oath and you have to convince me by clear and convincing evidence that family violence has occurred and it is-and I quote-'likely to occur in the future.' You have been all over that answer and you haven't told me specifically that you believe under the current situation that it is likely to occur in the future in the absence of a protective order.
[TAMMY]: Well, if he was to show up, I think, yes, something would happen. If he is not around, then, no. So I would think the order would keep him away. But if he was to come to the house or anywhere, I would not feel safe.
Tammy did not describe any past incident between Appellant and the children and she specifically denied that Appellant had ever been physically assaultive, abusive, or verbally threatening to the children. She acknowledged that she was not asking for a protective order on behalf of her children.
Chapter 81 of the Texas Family Code requires that "[a] court shall render a protective order ... if the court finds that family violence has occurred and is likely to occur in the future." TEX.FAM.CODE ANN . § 81.001 (West 2014). The trial court here granted a protective order prohibiting Appellant from directly communicating, or being with 350 feet of Tammy, A.F., or S.F. for eight months, and made the two necessary findings of (1) past family violence and (2) a likelihood that family violence would occur in the future.
Appellant brings two issues on appeal, claiming that the evidence is legally and factually insufficient to support the granting of a protective order. Tammy has not favored us with a brief. We begin with our standard of review.
*166 STANDARD OF REVIEW
This court has reviewed the issuance of a protective order under a hybrid standard of review that ultimately asks if the trial court abused its discretion . Dempsey v. Dempsey , 227 S.W.3d 771, 777 (Tex.App.-El Paso 2005, no pet.). In conducting our review of the trial court's finding and the order for an abuse of discretion, we apply a two-prong analysis: (1) did the trial court have sufficient information upon which to exercise its discretion; and (2) did the trial err in its application of discretion? Id .citin g Lindsey v. Lindsey , 965 S.W.2d 589, 592 (Tex.App.-El Paso 1998, no pet.). Traditional sufficiency of the evidence review standards apply when considering the first prong. Id.
This appeal, however, arrives on transfer from the Third Court of Appeals. It appears that court evaluates the predicate statutory findings purely for whether they are supported by legally and factually sufficient evidence. See B.C. v. Rhodes , 116 S.W.3d 878, 883-84 (Tex.App.-Austin 2003, no pet.) ; Daniels v. Funes , 03-10-00317-CV, 2011 WL 2437692, at *6 (Tex.App.-Austin June 17, 2011, pet. denied) (mem.op.); Febonio v. State ex rel. Fawn Li , 03-08-00518-CV, 2009 WL 2913920, at *2 (Tex.App.-Austin Aug. 25, 2009, no pet.) (mem.op.). Consistent with TEX.R.APP.P . 41.3, we apply the standard of review from the Third Court of Appeals.
A legal sufficiency challenge may only be sustained when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005). In determining whether there is legally sufficient evidence to support the finding, we must consider evidence favorable to the finding if a reasonable fact finder could, and disregard evidence contrary to the finding unless a reasonable fact finder could not. Id. at 827. Evidence is legally sufficient if it would enable fair-minded people to reach the finding or verdict under review. Id.
In reviewing a finding for factual sufficiency, we weigh all of the evidence in the record and set aside the challenged finding only if it is so contrary to the overwhelming weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996). The trier of fact is the sole judge of the weight and credibility of the witnesses' testimony. Golden Eagle Archery, Inc. v. Jackson , 116 S.W.3d 757, 761 (Tex. 2003).
MOOTNESS
We briefly detour to address an issue that we raise on our own-mootness. The protective order here has already expired and nothing in our record suggests it was the basis of any other proceeding. Subject-matter jurisdiction is fundamental to our authority to dispose of cases. Juarez v. Tex. Ass'n of Sporting Officials El Paso Chapter , 172 S.W.3d 274, 277-78 (Tex.App.-El Paso 2005, no pet.). And mootness generally defeats a court's subject-matter jurisdiction over a particular controversy. Beltran v. Beltran , 324 S.W.3d 107, 110 (Tex.App.-El Paso 2010, no pet.).
Nonetheless, the "collateral consequences" exception to the mootness doctrine allows an appellate court to review a case after it becomes moot. Marshall v. Housing Auth. of the City of San Antonio , 198 S.W.3d 782, 789 (Tex. 2006) ;
*167 State for Protec. of Cockerham v. Cockerham , 218 S.W.3d 298, 302 (Tex.App.-Texarkana 2007, no pet.) (collecting cases). Under that exception, an expired protective order based on a finding of family violence is reviewable because the "effects of a protective order carry significant collateral legal repercussions and a social stigma...." Cockerham , 218 S.W.3d at 303 ; see also Amir-Sharif v. Hawkins , 246 S.W.3d 267, 270 (Tex.App.-Dallas 2007, pet. dism'd w.o.j.) ; Ex parte Flores , 130 S.W.3d 100, 105 (Tex.App.-El Paso 2003, pet. ref'd) ; James v. Hubbard , 21 S.W.3d 558, 560 (Tex.App.-San Antonio 2000, no pet.). Because the order here is based on the allegations of abuse directed towards a spouse and children-allegations that carry a stigma in our society-Appellant is entitled to appellate review.
LEGAL SUFFICIENCY
Appellant's first issue claims that there is no evidence of past family violence, or the likelihood of future violence. We agree and disagree in part. The evidence, viewed in the light most favorable to the trial court's finding, shows that on March 21, 2016, Appellant pushed Tammy's face against a wall hard enough to cause bruising around her eye. The term "family violence" includes an act "that is intended to result in physical harm, bodily injury, [or] assault...." TEX.FAM.CODE ANN . § 71.004(1) (West 2014). Pushing a person's face against a wall hard enough to cause a bruise would meet that definition.
Appellant counters that Tammy's affidavit in support of her ex parte application for relief outlined two events-a hand slap some four years earlier, and the March 21 incident when her head was pushed into the wall. Appellant then contends that her testimony is "contradictory and incomplete" in part because while testifying, she also mentioned a shoving incident on February 21, 2016. In describing that event on direct examination, she was first asked if she had anything in her hand, "any sort of weapon or anything that can be misconstrued as being a weapon" and she responded no. Appellant, however, was claiming that he was defending himself, as Tammy was beating him with a tennis shoe. On cross-examination, Tammy agreed she had a tennis shoe in her hand, but denied hitting Appellant with it. Nonetheless, these are all matters that go to the weight and credibility of the Tammy's testimony, and the trial judge is the sole judge of those matters. See Golden Eagle Archery, Inc. v. Jackson , 116 S.W.3d 757, 761 (Tex. 2003) (stating that trier of fact is sole judge of credibility of witnesses and weight to be given their testimony). Moreover, the fact that Tammy mentioned an additional incident in response to a specific question does not negate her testimony about the two other events made the basis of the motion. There is more than a scintilla of evidence of past family violence.
Appellant also argues that Tammy's testimony about the likelihood of future violence is legally insufficient. We set out all of that testimony above, and she does at times equivocate about the certainty of a future event of violence ("I'm not positive, but, I mean, there is a chance" "I can't predict that"). Yet, when asked directly by the trial court, and after having been given an explanation of the standard, she testified that if Appellant came to her house "something would happen." The evidence also showed that Appellant needed to go back to the house as many of his uniforms and personal effects were still there. As the trier of fact, the trial court was free to believe Tammy's testimony and assign the weight to each of her answers. The testimony also suggests that including the date of the separation, Appellant had been to the house three times. On two of those three occasions, the couple got into *168 an argument that escalated to a physical altercation.
Courts have recognized that "[o]ftentimes, past is prologue; therefore, past violent conduct can be competent evidence which is legally and factually sufficient to sustain the award of a protective order." In re Epperson , 213 S.W.3d 541, 544 (Tex.App.-Texarkana 2007, no pet.) ; Under this principle, Appellant's commission of an act of family violence on March 21 would permit a finding that he was likely to engage in future family violence. See Boyd v. Palmore , 425 S.W.3d 425, 432 (Tex.App.-Houston [1st Dist.] 2011, no pet.). We think this particularly true when the family member denies the assault ever occurred and the fact finder disbelieves that denial. In that situation, there is no explanation of the event or expression of remorse. A reasonable fact finder might conclude that history will repeat itself. On this record, Tammy's testimony presents more than a scintilla of evidence that family violence has occurred as to her, and is likely to occur in the future. What we have said about Tammy, however, is not true of the children.
Appellant complains that the protective order includes the two children, A.F. and S.F., as protected persons. The original application was also brought for the protection of A.F. and S.F., and includes the allegation that Appellant "committed acts that were intended by [Appellant] to result in physical harm, bodily injury, assault, or sexual assault or were threats that reasonably placed [Tammy], [A.F.] and [S.F.] in fear of imminent physical harm, bodily injury, assault, or sexual assault." The children are mentioned by name three times in the protective order, and several of its provisions directly apply to them. A casual reader of the order might conclude that Appellant had acted inappropriately around the children. Yet there was no evidence of any issue of family violence respecting the children, and Tammy specifically testified that Appellant made no verbal or physical threat towards the children. She also testified that was not she asking for a protective order on their behalf. As to the children, there is legally insufficient evidence to support a finding of prior family violence or the prospect of future family violence.
That being said, the actual prohibitions in the order respecting the children were still appropriate. In a protective order, a court may prohibit a party from "removing a child who is a member of the family or household" from the possession of a person named in the order. TEX.FAM.CODE ANN . § 85.021(1)(A)(i). A protective order also may prohibit a direct communication "with a person protected by an order or a member of the family or household of a person protected by an order, in a threatening or harassing manner." Id. at § 85.022(b)(2)(A)(West Supp. 2016). It may prohibit a person from "going to or near the residence or place of employment or business of a person protected by an order or a member of the family or household of a person protected by an order." Id. at § 85.022(b)(3). It may also prohibit a person from "engaging in conduct directed specifically toward a person who is a person protected by an order or a member of the family or household of a person protected by an order" that is "reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass the person." Id. at § 85.022(b)(5). Each of these protections contemplate that contact with another member of the family might escalate and involve the protected person. The order here thus appropriately prohibited Appellant from engaging in these described acts. By defining A.F. and S.F. as protected persons, the order suggests that family violence was committed against them, and *169 the record is directly to the contrary. We thus reform the order to delete A.F. and S.F. as defined protected persons, but leave intact the specific prohibitions stated in the order that might apply to them as family or household members of a protected person. Otherwise, we overrule Issue One.
FACTUAL INSUFFICIENCY
In Issue Two, Appellant challenges the factual sufficiency of the evidence to support the protective order. Under a factual sufficiency challenge, we may consider all the evidence, favorable or unfavorable to the finding. Ortiz , 917 S.W.2d at 772.
Appellant restates his earlier arguments, but also suggests that he and his witnesses negated the possibility of an assault on March 21 because the timeline does not work. The problem with the argument is two-fold. First, a careful reading of the testimony reflects that the relevant times were qualified as estimates. Tammy testified to when she usually dropped her daughters off at school and when she usually got back to the house. She estimated when Appellant arrived after that, and then estimated how long they argued before the incident occurred. When she was asked for the time of the assault, her answer was "probably about 8:30, 9:30. I don't know the exact time." Second, there was an important missing piece of the puzzle. There is no estimate for how long it takes to drive from Tammy's residence to where Appellant appeared for roll call at 9:00 a.m. Without that information, there is no way to know whether the timeline works or not.
Considering Tammy's and Appellant's conflicting accounts of the incident and the trial court's role in weighing the credibility of witnesses, the family violence finding is not so contrary to the overwhelming weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. See Ortiz, 917 S.W.2d at 772. We overrule Issue Two and affirm the judgment as modified.