Opinion issued July 25, 2019



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00730-CV

————————————

**BRIAN WILLIAMS, Appellant**

**V.**

**SHAWNTAY WILLIAMS, Appellee**

---

**On Appeal from the 300th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 96783-F**

---

## MEMORANDUM OPINION

This is an appeal from a protective order granted by the trial court against appellant, Brian Williams. In his first two issues, Brian challenges the legal and factual sufficiency of the evidence supporting the granting of the protective order.

In his third issue, he contends that the trial court abused its discretion in denying his motion for new trial. We affirm.

## Background

Brian and appellee, Shawntay Williams, were in a relationship for twenty-three years. They married in 2011. They have two daughters: Bresha who is fifteen years old and Talaya who is twelve.

At the protective order hearing, Shawntay testified that Brian had been physically abusive to her throughout their relationship. In 1997 or 1998, Shawntay and Brian were arguing when Brian hit her in the jaw and choked her. Shawntay walked out of the house and called her aunt.

Sometime in the early 2000s, Brian became upset while on the phone with Shawntay and came home. When Shawntay did not let him in, he broke a window, entered the house, and choked her. After Shawntay called the police, Brian was arrested and served time in county jail. Shawntay testified that Brian drinks and often becomes intoxicated, and she believes that he was intoxicated that evening.

In 2015 or 2016, Brian became angry with Shawntay and choked her to the point where she could not breathe. She ran to a neighbor's house for help.

In February 2016, Brian and Shawntay moved to Pearland with Bresha and Talaya. On one occasion, Brian and Shawntay got into a heated argument during

2

which Brian grabbed her shirt.  The police were called and told them that one of them should leave the house.

On the night of October 13, 2017, Shawntay was asleep in the master bedroom when Brian came home intoxicated.  Shawntay testified that Brian asked her if she wanted to eat and became upset when she answered no.  When Shawntay told him to "lay down" and "sleep it off," he asked her if she was cheating on him.  Shawntay again told him to go to sleep and that nobody was cheating on him.  Brian closed the door, accused Shawntay of cheating, and told her that if he ever found out that she was cheating, he would kill her and whoever she was with.  Shawntay testified that Brian then took a samurai sword from the corner of their bedroom, held it to her neck, and told her, "I could kill you right now if I wanted to."  Brian told her that he would find her if she ever left him and that she better not take his kids. Shawntay testified that she was scared that he was going to hurt her.  Brian then removed Shawntay's gun from the safe in their closet and, sitting behind her, cocked the gun and pointed it at her head.  In an effort to keep him calm, Shawntay told him to go to bed.  She then told Brian "[y]ou know that I'm afraid of you.  I would never do anything like that to you." Brian then walked around the side of the bed and began choking Shawntay.  When he stopped choking her, she jumped up and ran to the bedroom door.  Brian blocked her exit, pushed her against the door, and tried to choke her again.

Bresha heard the commotion and got in between her parents to separate them. Shawntay testified that Bresha told Brian, "[y]ou're hurting my mom." Brian went to the kitchen and asked the girls if they wanted something to eat. Shawntay called the Pearland Police Department and two officers arrived. They took statements from Shawntay, Brian, and Bresha, and Brian was arrested. Afterwards, Shawntay obtained a thirty-one day emergency protective order. Shawntay moved out of their Pearland home on October 28, 2017.

During that time, Shawntay worked as a school bus driver with Pearland Independent School District. She testified that, on one occasion, while Shawntay was sitting in her car in the employee parking lot, Brian approached her and told her to get out of the car so he could speak to her. When she refused, he beat on the window several times and told her, "[o]kay. Watch. You will see. I'm going to kill you, Bitch." Shawntay called the police and Brian was arrested for violating the emergency protective order. She also testified that Brian would stand on her bus route and stare at her as she drove by. Brian also came to her place of work or her new residence several more times to try to intimidate her. Brian also sent a text message to Shawntay to let her know that he knew her apartment number, what side of the building her apartment was located, and what was on her balcony. On another occasion, Brian pulled up next to her while she was at a red light, made eye contact with her, and gestured as if holding a gun. Shawntay also testified that Brian texted

4

her, calling her a bitch and telling her that he would kill her, and said things such as "If I go down, we all go down."

Shawntay left her job with Pearland ISD after she was diagnosed with severe depression and had a nervous breakdown at work. She was unemployed at the time of trial. Shawntay testified that she feared Brian would continue threatening her without a protective order in place. She also testified that she wanted to divorce Brian but was currently unable due to financial hardship.

On cross-examination, Shawntay testified that, in 1997, she pulled a gun on Brian because he was cheating on her and brought the other woman to their home.

Bresha testified that, on the evening of October 13, 2017, she heard a commotion coming from her parents' room and her mom yelling, "get your hands off of me." She left her bedroom and went to her parents' room where she saw her father's hands on her mother's shirt. Bresha testified that her mother was in distress and crying. Bresha jumped between them, pushed her father off of her mother, and told her father that he was hurting her mother. Her mother went into the living room and called the police while her father continued to walk through the house. Bresha testified that her father has sent her mother threatening texts on many occasions, stating that he would kill or hurt her. She also testified that her father becomes aggressive when he is intoxicated. When her father saw a text message from one of

5

her male classmates, he told her that she was "too young to know what love is" and then whipped and choked her.

Alan Roca, a Pearland Department police officer, was dispatched to Brian and Shawntay's home just after midnight on October 13, 2017. When Officer Roca arrived, Brian was outside talking to an officer and Shawntay and Bresha were inside the house. Shawntay told Officer Roca that she saw Brian get a gun but did not state that he pointed it at her or mention a sword. Officer Roca testified that, based on Shawntay's and Bresha's statements to police, as well as the fact that Shawntay's shirt was torn, Brian was charged with misdemeanor assault-family violence.

Brian testified that, in 1997, he hit Shawntay in the jaw in self-defense because Shawntay tried to shoot him because she believed that he was having an affair. He testified that, in 2004, he broke a window of the apartment he shared with Shawntay and was arrested and charged with burglary of a habitation[1] and served three months in county jail. He denied grabbing and choking Shawntay during that incident. According to Brian, Shanwtay's account of a later incident when he choked her and she ran to a neighbor's house did not happen. Brian also denied putting a sword to Shawntay's neck or pointing a gun at her head on October 13, 2017, following Shawntay while she was working, or sending her threatening text messages.

---

[1]     According to Brian, he was arrested and charged with burglary of a habitation because his name was not on the apartment lease.

On June 14, 2018, the trial court signed a final protective order. This appeal followed.

## Sufficiency of the Evidence

In his first and second issues, Brian contends that the evidence is legally and factually insufficient to support the trial court's findings that family violence had occurred and was likely to occur in the future.

### A. Standards of Review

When the trial court acts as a factfinder, we review its findings under the legal and factual sufficiency standards. *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000); *Boyd v. Palmore*, 425 S.W.3d 425, 429 (Tex. App.—Houston [1st Dist.] 2011, no pet.). When a party who does not have the burden of proof at trial challenges the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *City of Hous. v. Hildebrandt*, 265 S.W.3d 22, 27 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (citing *Assoc. Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex. 1998)). If more than a mere scintilla of evidence exists, it is legally sufficient and we will overrule that issue. *Lozano v. Lozano*, 52 S.W.3d 141, 145 (Tex. 2001); *Hildebrandt*, 265 S.W.3d at 27. There is more than a scintilla of evidence if the

7

evidence rises to a level that would enable reasonable and fair-minded people to reach differing conclusions. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782–83 (Tex. 2001).

In reviewing factual sufficiency, we examine the entire record in order to consider and weigh all the evidence, both in support of, and contrary to, the challenged finding. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Boyd*, 425 S.W.3d at 429. After considering and weighing all the evidence, we set aside the verdict only if the evidence is so weak, or the finding is so against the great weight and preponderance of the evidence, that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We cannot substitute our opinion for that of the trier of fact merely because we might reach a different conclusion. *Boyd*, 425 S.W.3d at 429. The trier of fact remains the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id*. at 431.

## B. Applicable Law

The Texas Family Code provides that a court shall enter a protective order if it finds that family violence (1) has occurred and (2) is likely to occur in the future. TEX. FAM. CODE §§ 81.001, 85.001. "Family violence" is defined, in pertinent part, as:

> [A]n act by a member of a family ... against another member of the family ... that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or

sexual assault, but does not include defensive measures to protect oneself.

*Id.* § 71.004(1). "Family" is defined to include individuals who are spouses. *Id.* § 71.003. "The purpose of the protective order statute is not to remedy past wrongs or punish prior criminal acts; rather, it seeks to protect the applicant and prevent future violence." *Roper v. Jolliffe*, 493 S.W.3d 624, 634–35 (Tex. App.—Dallas 2015, pet. denied). It is undisputed that Brian and Shawntay were spouses at the time of the hearing.

In addition to acts intending physical harm, threats that reasonably place the victim in fear of imminent harm constitute family violence. *See, e.g., Boyd*, 425 S.W.3d at 430–31 (concluding that appellant committed act of family violence when he blocked appellee's car with his body and jumped on hood of car); *Clements v. Haskovec*, 251 S.W.3d 79, 85–86 (Tex. App.—Corpus Christi 2008, no pet.) (concluding that appellant committed act of family violence by raising his fist and making other threats though he never actually struck family member). In cases involving protective orders against family violence, evidence that a person has engaged in abusive conduct in the past permits an inference that the person will continue this behavior in the future. *See Teel v. Shifflett*, 309 S.W.3d 597, 604 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) ("The trial court reasonably could have concluded that future violence is likely to occur based on the testimony showing a pattern of violent behavior."); *In re Epperson*, 213 S.W.3d 541, 543–44

(Tex. App.—Texarkana 2007, no pet.) (concluding past and continuing pattern of behavior showed applicant was reasonable in fearing respondent would commit acts of "family violence" in future).

## C. Analysis

The evidence, viewed in the light most favorable to the trial court's finding, shows that, on October 13, 2017, Brian arrived home intoxicated while Shawntay was asleep. Brian went into the bedroom and repeatedly accused Shawntay of cheating on him, telling her that if he found out that she was cheating on him, he would kill her and whoever she was with. Brian held a samurai sword to Shawntay's neck and told her that he could kill her if he wanted to and then pointed a cocked gun at her head. Afterwards, Brian began choking Shawntay to the point where she could no longer breathe. When she tried to run out of the room, he blocked her exit, pushed her against the door, and tried to choke her again. Shawntay testified that she was scared that he was going to hurt her. Bresha heard the commotion and her mom yell "get your hands off of me." When she got to her parents' room, Bresha found her mother in distress and crying and saw her father's hands on her mother's shirt. Bresha jumped between them, pushed her father off of her mother, and told her father that he was hurting her mother. The October 13, 2017 incident, the summoning of the police, Shawntay's testimony about her fearfulness as well as Bresha's testimony about her mother's distress, provide legally sufficient evidence

10

supporting the trial court's finding that Brian committed "an act . . . that [was] a threat that reasonably placed [Shawntay] in fear of imminent physical harm, bodily injury, [or] assault," and thus satisfied the definition of "family violence." *See* TEX. FAM. CODE § 71.004(1).

In support his contention that the evidence is legally and factually insufficient to show that he committed an act that reasonably placed Shawntay in fear of imminent harm, bodily injury or assault, Brian points to inconsistencies in the witnesses' testimony. He also asserts that it is inconceivable that he could have put a sword to Shawntay's neck and pointed a gun at her head yet she did not tell the police or include this information in her written statement.

As the factfinder, the trial court was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Boyd*, 425 S. W.3d at 431; *see also Pena v. Garza*, 61 S.W.3d 529, 532 (Tex. App.—San Antonio 2001, no pet.) (noting trial court is free to reject or accept all or part of witness's testimony). Here, the trial judge heard the witnesses testify during the hearing and was free to believe Shawntay's testimony regarding the abuse and disbelieve Brian's efforts to discredit that testimony, even without evidence corroborating every detail of Shawntay's account. *See Boyd*, 425 S.W.3d at 431 (holding trial court was free to place greater weight on applicant's testimony when making family violence finding). Moreover, the fact that Shawntay did not tell police that Brian held a sword to her neck and

11

pointed a gun to her head during the October 13, 2017 incident does not negate her testimony that those events occurred. *See Amir–Sharif v. Hawkins*, 246 S.W.3d 267, 272 (Tex. App.—Dallas 2007, pet. dism'd w.o.j.) (rejecting contention that protective order was erroneous because no documentary evidence was introduced corroborating applicant's testimony); *see also Martin v. Martin*, 545 S.W.3d 162, 167 (Tex. App.—El Paso 2017, no pet.) (concluding fact that ex-wife mentioned additional incident in response to specific question does not negate her testimony about two other events made basis of motion for protective order).

Courts have also observed that "[o]ftentimes, past is prologue; therefore, past violent conduct can be competent evidence which is legally and factually sufficient to sustain the award of a protective order." *In re Epperson*, 213 S.W.3d at 544 (citing *In re T.L.S.*, 170 S.W.3d 164 (Tex. App.—Waco 2005, no pet.)). In addition to the October 13, 2017 incident, Shawntay testified to three prior incidents when Brian choked her during the course of their relationship. She also testified that on numerous occasions Brian verbally threatened her, telling her that he would kill or hurt her. After the October 2017 incident, Brian approached her several times and threatened her, including beating on her car window on one occasion when she refused to speak with him, and also texted her that he knew where she lived. Bresha also testified that her father has sent her mother threatening texts on many occasions, stating that he would kill or hurt her. *See Kuzbary v. Kuzbary*, No. 01-14-00457-

12

CV, 2015 WL 1735493, at *5 (Tex. App.—Houston [1st Dist.] April 14, 2015, no pet.) (mem. op.) (evidence supporting protective order included instances of physical aggression occurring several years before application for protective order); *Dempsey v. Dempsey*, 227 S.W.3d 771, 778 (Tex. App.—El Paso 2005, no pet.) (evidence supporting protective order included actions by ex-husband five years before application for protective order).

The record before the trial court chronicled two decades of physical abuse. In light of that history of abuse, Brian's conduct on October 13, 2017, and his repeated threats and intimidation of Shawntay following that incident, the trial court reasonably could have concluded that Brian's conduct constituted a threat that reasonably placed Shawntay in fear of imminent physical harm, bodily injury, or assault. This constitutes more than a scintilla of evidence that "family violence" had occurred in the past. *See* TEX. FAM. CODE § 71.004(1); *Boyd*, 425 S.W.3d at 430 (holding evidence that respondent had engaged in threatening behavior, including following applicant to her mother's office, blocking her car, and jumping on her car's hood, was legally sufficient to support trial court's finding of "family violence"). Similarly, we conclude that there is evidence supporting the trial court's finding that Brian would likely commit family violence in the future. *See Teel*, 309 S.W.3d at 604 ("The trial court reasonably could have concluded that future violence is likely to occur based on the testimony showing a pattern of violent behavior."); *In*

13

*re Epperson*, 213 S.W.3d at 543–44 (concluding past and continuing pattern of behavior showed applicant was reasonable in fearing respondent would commit acts of "family violence" in future).

Nor is the evidence factually insufficient to support entry of the protective order, particularly in view of the evidence establishing a pattern of similar conduct in the past. Because the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony, *see Boyd*, 425 S.W.3d at 431, the trial court was free to place greater weight on Shawntay's testimony and to conclude that Brian's actions during the October 2017 incident placed Shawntay in reasonable and imminent fear for her safety. Shawntay's testimony that Brian choked her and threatened her with weapons, and Bresha's testimony that her mother was crying and in distress when she came to her parents' room, that her father was holding her mother's shirt, and that she feared that her father was going to hurt her mother, was not so weak as to be clearly wrong or manifestly unjust and is therefore factually sufficient. *See id*. We overrule Brian's first and second issues.

## Motion for New Trial

In his third issue, Brian contends that the trial court abused its discretion in denying his motion for new trial.

A court has broad discretion to grant a motion for new trial and may do so "for good cause." Tex. R. Civ. P. 320; *In re Columbia Med. Ctr. of Las Colinas,*

14

*Subsidiary, L.P.*, 290 S.W.3d 204, 210 (Tex. 2009). The denial of a motion for new trial is reviewed for abuse of discretion. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010); *Sozanski v. Plesh*, 394 S.W.3d 601, 604 (Tex. App.—Houston [1st Dist.] 2012, no pet.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles or fails to correctly analyze or apply the law. *Celestine v. Dep't of Family & Protective Servs.*, 321 S.W.3d 222, 235 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Sozanski*, 394 S.W.3d at 604.

In his motion for new trial, Brian challenged the legal and factual sufficiency of the evidence supporting the trial court's finding that family violence occurred and that it was likely to occur in the future. In particular, he argued that Shawntay's testimony that he violated the thirty-one day emergency protective order when he appeared at her workplace was contradicted by an email dated November 4, 2017, that she allegedly sent to him so that he could provide it to the trial court. The email states that Brian came to her workplace to tell her that their older daughter was sick and he needed the insurance card in Shawntay's wallet. She further stated that "it was all a big misunderstanding" and that she did not believe that he came to intentionally harm her. Even if Shawntay sent this email to clarify the events of

15

November 4, 2017, she testified that Brian came to her place of work and her new residence on more than occasion to threaten and intimidate her.[2]

The evidence in the record before us is legally and factually sufficient to support the trial court's finding of family violence.  We conclude that the trial court did not abuse its discretion in denying Brian's motion for new trial.  We overrule his third issue.

### Conclusion

We affirm the trial court's protective order.


Russell Lloyd
Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.

---

[2]   The November 6, 2017 email, which was attached as an exhibit to his motion for new trial, was not offered as evidence at the June 14, 2018 hearing on Shawntay's motion for protective order.