NOT DESIGNATED FOR PUBLICATION

No. 123,342

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

D.G.,
*Appellee*,

v.

M.G.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; WILLIAM E. PRAY, judge pro tem. Opinion filed December 17, 2021. Affirmed.

*Helen H. White* and *Antony V. Jones*, of Stange Law Firm, P.C., of Overland Park, for appellant.

*Chadler E. Colgan*, of Colgan Law Firm, LLC, of Kansas City, for appellee.

Before SCHROEDER, P.J., WARNER and ISHERWOOD, JJ.

PER CURIAM: D.G. obtained a protection from stalking order against her former husband, M.G. M.G. appeals, arguing the evidence was insufficient to grant the order. The order expired while this appeal was pending, and we ordered M.G. to show cause why the case is not moot. M.G. acknowledges that the order is no longer in effect, but he argues that collateral consequences of the expired order render the case a real controversy we may decide on appeal. We agree and reach the merits of his claim. Because the evidence was sufficient to enter the order, we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

D.G. and M.G. divorced in March 2020. In April 2020, D.G. filed petitions for protection from abuse (PFA) and protection from stalking, sexual assault, or human trafficking (PFS) based on various incidents with M.G. The district court entered a temporary PFS order and continued that order until it could hold a full hearing (delayed by the ongoing COVID-19 pandemic).

The district court considered the PFA and PFS petitions at an evidentiary hearing on August 17, 2020. At the hearing, D.G. testified, and M.G., appearing pro se, made arguments and answered questions from the court. The district court denied D.G.'s PFA petition, finding that the cited incident was too remote in time. The evidence presented focused mostly on allegations related to the PFS petition.

D.G. testified that issues between her and M.G. escalated after their divorce. She told M.G. to only contact her about their son, but in March 2020 M.G. began making unwanted communications through phone calls and text messages to D.G. multiple times a day. Specifically, on March 14, M.G. sent 18 text messages and called 8 times while D.G. napped with their son. She also presented evidence about a second specific incident—a series of insulting and vulgar text messages M.G. sent on April 19. At the hearing, M.G. admitted he sent these messages.

D.G. also referenced multiple other undated text messages that caused her concern about M.G.'s mental state. She testified that these messages, given the parties' history, placed her in fear for her safety and imminent bodily harm and caused significant anxiety. D.G. also worried that M.G. would show up unannounced and take their son away from her.

2

In response to D.G.'s testimony, M.G. stated that the March 14 calls were an accident. He claimed that D.G. filed the petitions in retaliation for her military command finding out about incidents of adultery and fraternization, and that she was using the pandemic to prevent M.G. from seeing their son. After hearing this testimony and reviewing the evidence presented, the district court entered a PFS order for one year. That order expired on August 17, 2021.

DISCUSSION

M.G.'s primary argument on appeal is that the evidence was insufficient to support the PFS order against him. But the timing of this appeal and the expiration of the PFS order have created a preliminary issue regarding the reviewability of M.G.'s claim. In particular, because the PFS order expired while this appeal was pending, we ordered M.G. to show cause why the case is not moot. M.G. does not dispute that the order expired, but he argues that the collateral consequences of the order—to his reputation, employment prospects, and security clearance—allow us to decide the case. D.G. also seeks attorney fees and costs on appeal, arguing that M.G.'s appeal is frivolous and seeks only to harass or delay.

We agree with M.G. that the collateral consequences of the PFS order—in particular, the effect of that order on his security clearance—mean that the case before us is not moot. But we also find that there was sufficient evidence presented to support the PFS order. Finally, although M.G. has not prevailed in his appeal, it was not frivolous; we therefore deny D.G.'s request for attorney fees.

1. *The collateral consequences of the expired PFS order allow us to decide this appeal.*

Unlike the legislative and executive branches, Kansas courts do not have the constitutional authority to issue advisory opinions. *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 898, 179 P.3d 366 (2008). Instead, courts are called on to decide concrete

3

questions that will have an actual impact on the parties before us—to "'determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such manner that the determination will be operative, final, and conclusive.'" *State v. Roat*, 311 Kan. 581, 590, 466 P.3d 439 (2020).

As a corollary to this principle, even if a court case began with an active dispute, courts will generally not continue to hear the case if the issues presented become "moot." 311 Kan. at 584. A case is moot when "'the actual controversy'" in the case has ended, and any judgment that could be entered "'would be ineffectual for any purpose'" and "'would not impact any of the parties' rights.'" 311 Kan. at 584.

But mootness is prudential, not jurisdictional, and there are judicially created exceptions to this doctrine that allow for continued appellate review even when a controversy appears to have ended. 311 Kan. at 590. One exception applies when an otherwise moot judgment still affects the "vital rights" of a party. 311 Kan. at 596. The party invoking this exception must point to specific adverse collateral consequences of an expired order or sentence. See *State v. Montgomery*, 295 Kan. 837, 841-42, 286 P.3d 866 (2012). These consequences need not have already happened, for "[a] case is not moot where it may have adverse legal consequences in the future." 295 Kan. 837, Syl. ¶ 4. Still, collateral consequences cannot be too speculative. Litigants "must give substance to their arguments when asserting that protection of collateral rights necessitates resolution of their underlying appellate issues." *Roat*, 311 Kan. at 601.

We generally require specificity when parties invoke the vital rights exception in the protective order context. *C.M. v. McKee*, 54 Kan. App. 2d 318, 320-21, 398 P.3d 228 (2017). For example, asserting a potential harm to recredentialing for a professional license is enough to overcome the mootness bar for an expired order. *Piazza v. Piazza*, No. 90,593, 2004 WL 1443899, at *1 (Kan. App. 2004) (unpublished opinion). But

4

broadly asserting that an expired order will adversely affect a person's rights in the future is not enough. *Allen v. Allen*, No. 104,893, 2011 WL 6382881, at *2 (Kan. App. 2011) (unpublished opinion).

Without squarely addressing the issue, panels of this court have differed on whether and when adverse reputational or employment consequences are sufficient to provide for continued review of otherwise moot questions. See *Hunsaker on behalf of C.H. v. Harden*, No. 120,699, 2019 WL 5089846, at *3-4 (Kan. App. 2019) (unpublished opinion) (collecting cases). One panel held that the stigma of being publicly labeled a "stalker" because of a PFS order is too speculative without a related adverse impact on the person's legal rights. *C.M.*, 54 Kan. App. 2d at 321. Another panel similarly found the appellant's assertion of "'undue prejudice in his personal and employment life'" was insufficient. *Hunsaker*, 2019 WL 5089846, at *4.

At least one panel came to a different conclusion, finding that an appeal of an expired PFS order was not moot because "[a] finding that a person is a stalker or involved in stalking behavior can have long-term consequences for that person," especially in future protective order or criminal cases. *Kaster v. Riley*, No. 117,008, 2018 WL 672106, at *4 (Kan. App.) (unpublished opinion), *rev. denied* 308 Kan. 1595 (2018). But other panels have characterized this reasoning—that the stigma of being the subject of a protective order is itself a sufficient collateral consequence—as a minority view. *Hunsaker*, 2019 WL 5089846, at *3.

Other states have determined that reputational harm from an expired protective order is enough to overcome mootness. In his response to our show-cause order, M.G. pointed to *Hamilton ex rel. Lethem v. Lethem*, 119 Haw. 1, 193 P.3d 839 (2008), in which the Hawaii Supreme Court held that reputational harm from an expired domestic violence restraining order was a sufficient collateral consequence to warrant continued review. 119 Haw. at 9-10. *Hamilton* relied on a Connecticut Supreme Court decision that came to the

same conclusion, "recognizing reputation harm and other potential legal disabilities as collateral consequences of otherwise moot court orders." *Putman v. Kennedy*, 279 Conn. 162, 170-71, 900 A.2d 1256 (2006). Some other states have agreed that collateral consequences like reputational harm or social stigma are enough to hear an appeal from an expired order. See, e.g., *Chretien v. Chretien*, 2017 ME 192, 170 A.3d 260, 262-63 (2017) (collecting cases); *Martin v. Martin*, 545 S.W.3d 162, 166-67 (Tex. App. 2017) ("'effects of a protective order carry significant collateral legal repercussions and a social stigma'").

We need not determine whether M.G.'s claims of harm to his reputation and employment prospects are enough, however, because he stated a separate concrete, nonspeculative harm in losing his security clearance. In his response to the show cause order, M.G. stated that he already lost his security clearance as a direct result of the PFS order. This is a sufficient collateral consequence that meets the vital rights exception to the mootness rule, and a decision in his favor could rectify that harm. Thus, we can reach the merits even though the order at issue expired.

2. *The evidence was sufficient to support the PFS order.*

In a challenge to the sufficiency of the evidence supporting a PFS order, appellate courts review the district court's factual findings for substantial competent evidence, then whether those findings are sufficient to support the district court's conclusions of law. *Wentland v. Uhlarik*, 37 Kan. App. 2d 734, 736, 159 P.3d 1035 (2007). We view the evidence in the light most favorable to the prevailing party below and will not reweigh the evidence or pass on witness credibility. 37 Kan. App. 2d at 736. Review of the district court's conclusions of law is de novo. *Nicholas v. Nicholas*, 277 Kan. 171, 177, 83 P.3d 214 (2004). "On appeal, we generally conclude that the district court has found whatever facts would support its judgment if those facts are supported by substantial evidence." *C.M.*, 54 Kan. App. 2d at 324.

The district court entered the PFS order under the Protection from Stalking Act, which "shall be liberally construed to protect victims of stalking." K.S.A. 2020 Supp. 60-31a01(b). In a PFS action, the plaintiff must prove stalking by a preponderance of the evidence. K.S.A. 2020 Supp. 60-31a05(a). He or she must provide evidence of harassment, which requires a "course of conduct"—that is, "conduct consisting of two or more separate acts over a period of time, however short, evidencing a continuity of purpose which would cause a reasonable person to suffer substantial emotional distress." K.S.A. 2020 Supp. 60-31a02(d), (d)(1), (d)(2).

M.G. asserts that there was only evidence of one act—not two or more as the statute requires—and thus there was insufficient evidence of stalking. He admits to the March 14 calls and text messages but claims there was no evidence of any other incident.

M.G. ignores evidence of other incidents in the record. Besides the March 14 incident, D.G. testified about an incident on April 19 in which M.G. sent a string of harassing and offensive text messages. D.G. admitted a screenshot of these messages into evidence at the hearing. When reviewing the screenshot at the hearing, M.G. admitted that "these are my messages." D.G. also testified about other undated incidents of M.G. sending alarming or harassing text messages. And she specifically testified that M.G.'s messages made her fear for her safety. There was substantial evidence below of at least two incidents of stalking—the March 14 incident (which M.G. concedes on appeal), and the April 19 incident (which M.G. admitted to at the hearing below).

M.G. also argues that the district court inadequately explained its findings when issuing the order. But a district court does not have to identify all incidents supporting a PFS order when substantial evidence supports the court's findings. *C.M.*, 54 Kan. App. 2d at 324. Substantial evidence from the hearing supported a finding of at least two incidents

of stalking—March 14 and April 19. Because of that evidence, any lack of specificity in the district court's ruling is not a ground for error on appeal.

M.G. presented a different explanation for the text messages, but we cannot reassess the district court's credibility determination on this point. Viewing the evidence in the light most favorable to D.G., substantial competent evidence supports a finding of at least two acts of stalking, and sufficient evidence supports the district court's entry of the PFS order.

3. *D.G. is not entitled to attorney fees.*

After the parties submitted their briefs in this case and the matter was set on a docket, D.G. moved for appellate attorney fees, asserting that M.G.'s appeal is frivolous. Supreme Court Rule 7.07(b)(1) (2021 Kan. S. Ct. R. 51) allows this court to award attorney fees when the district court could do so, and Supreme Court Rule 7.07(c) (2021 Kan. S. Ct. R. 51) allows an award of attorney fees for a frivolous appeal. The district court could award attorney fees under K.S.A. 2020 Supp. 60-31a06(f), so D.G.'s motion depends on whether M.G.'s appeal is frivolous.

A frivolous appeal fails to present a justiciable question and "'is readily recognized as devoid of merit in that there is little prospect that it can ever succeed.'" *McCullough v. Wilson*, 308 Kan. 1025, 1037, 426 P.3d 494 (2018). Although M.G.'s arguments are unpersuasive and unsupported by the record, his appeal is not frivolous. He appeals as of right from the entry of a PFS order against him and makes the valid—but unsuccessful— argument that there was insufficient evidence to support the order. This appeal still presents a justiciable question, and although M.G.'s argument is not persuasive, it does not reach the level of a frivolous appeal warranting attorney fees.

Affirmed.