**Affirmed and Opinion Filed July 26, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00161-CV**

**RAKESH THOUTAM, Appellant**
**V.**
**GEETANJALI PARAMKUSAM, Appellee**

**On Appeal from the 302nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. CV21-00750**

## MEMORANDUM OPINION

Before Justices Molberg, Pedersen, III, and Miskel
Opinion by Justice Miskel

Rakesh Thoutam appeals the trial court's family-violence order of protection rendered against him for the protection of his wife, Geetanjali Paramkusam.[1] Thoutam raises two issues on appeal: (1) the evidence is factually insufficient to prove that he is likely to commit family violence in the future; and (2) the evidence is insufficient to prove venue in Dallas County was proper. We conclude the evidence is factually sufficient and Thoutam waived his venue complaint. The trial court's order of protection is affirmed.

---

[1] Paramkusam is represented on appeal by the Dallas County District Attorney's Office.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Thoutam and Paramkusam are in an arranged marriage. They live in the United States, and Paramkusam is employed as a software developer under an H-1B visa. Paramkusam stated that, since she married Thoutam, she has been "abused mentally, physically, and verbally." According to Paramkusam, Thoutam is controlling and even "forcefully" made her abort her pregnancy in India because the abortion would have been "illegal in the U.S." And Thoutam has repeatedly threatened that he has the power to send Paramkusam back to India.

Thoutam also committed acts of physical violence against Paramkusam. In April 2021, Thoutam slapped Paramkusam three to four times with an open hand across her cheeks and choked her with both hands causing her to be unable to breathe. Then, he grabbed her shirt, dragged her from the bed, and threw her out of their apartment. Paramkusam sat on the stairs crying until he called her back into the apartment. She returned to the apartment because she was afraid that if she failed to obey him, Thoutam would become "more furious." After returning to their apartment, Paramkusam went into the bedroom, changed her clothing, and, after waiting ten minutes, left to go to a friend's house.

As Paramkusam was walking to her friend's house, Thoutam followed her in a car and told Paramkusam to get in so he could drive her to her destination. Once Paramkusam was in the car, Thoutam started their argument again and hit her in the face with a closed fist. Paramkusam asked him to stop hitting her and why he was

taking a "different route." When "there was a signal," Paramkusam got out of the car, but Thoutam followed her in the car crossing several lanes while telling her to get back into the car. Paramkusam agreed to get into the car if he would stop hitting her, and he eventually took her to her friend's house. Paramkusam did not call the police after this incident because she hoped that her husband would change his behavior.

On September 29, 2021, Thoutam committed family violence against Paramkusam again. That day, they began to argue, and Thoutam forcefully pushed Paramkusam into the living room wall causing her body to hit the wall three times and held her by the throat. Then, he tried to hit her with his fist, but Paramkusam escaped, and he hit the wall instead leaving a hole in the wall. Paramkusam fled to the bedroom, but Thoutam followed and dragged her back into the living room where he choked her with both hands. Paramkusam struggled to breathe and coughed a lot, and she felt like she was going to lose consciousness. During this incident, Thoutam told Paramkusam not to raise her voice and to remain silent. Paramkusam was crying and kept asking him why he was holding her throat, and Thoutam told her she should just "listen to him and obey." Eventually, Paramkusam went to their bedroom and laid down. Her ears and neck were hurting, and it was painful to swallow. Paramkusam did not call the police because she continued to hope that Thoutam would change his behavior.

On the morning of September 30, 2021, based on her past experiences with Thoutam, Paramkusam was expecting another incident to occur, so she placed a hidden camera in their living room. In the recording made that morning, Thoutam and Paramkusam are speaking Telugu, and according to Paramkusam, he admitted to choking her in the past. The video recording also shows Thoutam grabbing Paramkusam's wrist and twisting her arm while raising his hand up in a slapping motion. Paramkusam stated that, prior to this video, Thoutam had raised his hand in a similar manner and threatened to hit her more than fifteen times.

On October 29, 2021, Thoutam committed family violence against Paramkusam again. While in the living room, Thoutam slapped Paramkusam on both of her cheeks with an open hand four times. As a result, Paramkusam sustained a wound on the inside of her cheek. Then, while she was sitting on the sofa, he bent over her and choked her with both hands. Paramkusam struggled to breathe. When she was able to break away, she went near the front door and called 9-1-1.

The police arrived, arrested Thoutam, and according to Paramkusam, Thoutam was charged with "domestic violence assault imped[ing] breath." A magistrate issued a 61-day emergency protective order in connection with the arrest, and Paramkusam also applied for a final protective order under the Texas Family Code.

During the hearing on Paramkusam's application for a final protective order, she stated that she wanted to proceed with criminal charges against Thoutam and she

–4–

had concerns about her safety. But Paramkusam also had cultural concerns about her marriage. She stated that she will "face it" from her in-laws because they want her to obey and do what they say, and they do not value what she wants. In addition, Paramkusam stated that, in India, her family had met with Thoutam's family, but no legal petitions had been filed in India by her family against Thoutam and his family yet. On February 1, 2022, the trial judge signed a two-year protective order granting Paramkusam's application and stating in part that the trial court found family violence had occurred, and it was likely to occur in the future. The trial court also ordered Thoutam to complete a battering intervention and prevention program.

## II. FACTUAL SUFFICIENCY OF THE EVIDENCE

In issue one, Thoutam argues the evidence is factually insufficient to support the trial court's finding that he is likely to commit family violence in the future. He claims that, at the time of the hearing, he was still married to Paramkusam, and there was no evidence adduced that their marital status was going to change. Also, he contends that the evidence shows their marriage was a sham "brokered for financial consideration and as a means for [Paramkusam] to live and work in the United States." As a result, he argues it is more likely than not that the alleged abuse never occurred. And if it did, the families have already settled the dispute privately so it is unlikely future violence will occur. Paramkusam responds that the evidence establishes Thoutam's pattern of physical abuse, threats, and violence against her in the past, which supports a finding of future violence.

–5–

## A. *Standard of Review*

An appellate court reviews challenges to family-violence protective orders for legal and factual sufficiency.[2] *See In re E.A.K.*, No. 05-16-00724-CV, 2017 WL 2391722, at *3 (Tex. App.—Dallas June 1, 2017, no pet.) (mem. op.). When an appellant challenges the factual sufficiency of the evidence on an issue, an appellate court considers all of the evidence supporting and contradicting the trial court's findings. *Pleasant v. Black*, No. 05-20-01040-CV, 2022 WL 807190, at *4 (Tex. App.—Dallas Mar. 17, 2022, no pet.) (mem. op.). An appellate court sets aside a finding for factual insufficiency only if the finding is so contrary to the evidence as to be clearly wrong and manifestly unjust. *Id.* In a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses. *Id.* The factfinder may decide to believe one witness and disbelieve another. *Id.* An appellate court will not substitute its judgment for that of the trial court merely because the appellate court might reach a different conclusion. *Id.*

---

[2] Although this Court evaluates family-violence protective orders for legal and factual sufficiency, we note that there is a conflict among the intermediate appellate courts as to the appropriate standard of review, with some courts applying a legal and factual sufficiency review and others applying an abuse of discretion standard. *E.g., In re E.A.K.*, No. 05-16-00724-CV, 2017 WL 2391722, at *3 n.1 (Tex. App.—Dallas June 1, 2017, no pet.) (mem. op.); *Martin v. Martin*, 545 S.W.3d 162, 166 (Tex. App.—El Paso 2017, no pet.); *Warren v. Earley*, No. 10-10-00428-CV, 2011 WL 3850035, at *2, n.1 (Tex. App.—Waco Aug. 31, 2011, no pet.) (mem. op.).

### B. Applicable Law

Protective orders may be issued pursuant to provisions in the Texas Family Code.[3]  *See* TEX. FAM. CODE ANN. § 82.002 (allowing person to file application for protective order to protect against family violence).  Under the Texas Family Code, a trial court shall render a protective order if, at the close of a hearing on the application for a protective order, the court finds that family violence has occurred and is likely to occur in the future.  *Id.* §§ 81.001, 85.001.  A protective order is a statutory remedy that is distinct from a permanent injunction.  *See Roper v. Jolliffe*, 493 S.W.3d 624, 633-34 (Tex. App.—Dallas 2015, pet. denied).  A protective order does not require a party to establish liability on an underlying cause of action, and it is the result of an expedited proceeding.  *Id.*  The purpose of the statute is to provide an expedited procedure for victims of domestic violence; the purpose is not to correct past wrongs or establish liability but to give immediate protection to the applicant.  *Id.*

"Family" includes individuals related by affinity as determined under § 573.024 of the Texas Government Code.  *See* TEX. FAM. CODE ANN. § 71.003.  Two individuals are related by "affinity" if they are married to each other.  TEX. GOV'T CODE ANN. § 573.024(a)(1).

---

[3] Section 85.001 was amended effective September 1, 2023, and applies to all protective orders rendered after that date.  *See* Act of May 24, 2023, 88th Leg., R.S., ch. 688, § 1, 2023 Tex. Sess. Law Serv. ch. 688 (H.B. 1432) (to be codified at TEX. FAM. CODE ANN. § 85.001).

"Family violence" means an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault but not does include defensive measures to protect oneself. TEX. FAM. CODE ANN. § 71.004(1); *Myers v. Regan*, No. 05-21-00919-CV, 2023 WL 415946, at *2 (Tex. App.—Dallas Jan. 26, 2023, no pet.) (mem. op.). Intentionally or knowingly causing physical contact with another when the person knows or should reasonably believe the other will regard the contact as offensive or provocative meets this statutory definition. *Myers*, 2023 WL 415946, at *2; *see also* TEX. PENAL CODE ANN. § 22.01(a)(3).

Evidence of multiple instances of past violence is not necessary to support a finding that there is a likelihood of future violence. *Myers*, 2023 WL 415946, at *3. In cases involving family-violence protective orders, one incident permits an inference that the person will continue such behavior in the future. *Id.*

### C. The Evidence is Factually Sufficient to Support the Protective Order

At the outset, we note that Thoutam argues only that the evidence is factually insufficient to support the trial court's finding that he is likely to commit family violence in the future. He does not argue that the evidence is factually insufficient to support the trial court's finding that family violence has occurred.

The record shows that Paramkusam testified about four different instances when family violence occurred. First, Paramkusam stated that, in April 2021, Thoutam slapped her three to four times with an open hand across her cheeks and choked her with both hands causing her to be unable to breathe. Then, later that day, while they were in the car, Thoutam hit her in the face with a closed fist. Second, Paramkusam testified that, on September 29, 2021, Thoutam forcefully pushed her into the living room wall causing her body to hit the wall three times and held her by the throat. Then, he tried to hit her with his fist, but she escaped and he hit the wall instead, leaving a hole in the wall. Paramkusam stated that she fled to the bedroom, but Thoutam followed and dragged her back into the living room where he choked her with both hands. Third, Paramkusam described that based on her past experiences with Thoutam, she was expecting another incident to occur so she placed a hidden camera in their living room on September 30, 2021. The video recording was admitted into evidence and shows Thoutam grabbing Paramkusam's wrist and twisting her arm while raising his hand up in a slapping motion. Fourth, Paramkusam stated that, on October 29, 2021, Thoutam slapped her on both of her cheeks with an open hand four times, causing her to sustain a wound on the inside of her cheek. Then, while she was sitting on the sofa, Thoutam bent over her and choked her with both hands. Paramkusam stated she called the police after this incident, Thoutam was arrested, and she was granted an emergency protective order.

Further, Paramkusam stated that since she married Thoutam, she has been "abused mentally, physically, and verbally."

To the extent Thoutam argues that the evidence is factually insufficient because, at the time of the hearing, he was still married to Paramkusam and there was no evidence adduced that their marital status was going to change, Thoutam does not point us to any authority to support this proposition, nor did we find any. Nothing in the Texas Family Code requires that a party must file for or obtain a divorce before she can be granted a protective order. Instead, the statute anticipates that a presently-married spouse may obtain a protective order. Section 82.002(a) provides that an adult member of the family or household may file an application for a protective order. TEX. FAM. CODE ANN. § 82.002(a). "Family" includes individuals who "are" married to each other. TEX. GOV'T CODE ANN. § 573.024(a)(1); TEX. FAM. CODE ANN. § 71.003. Further, a protective order does not require a party to establish liability on an underlying cause of action. *See generally Roper*, 493 S.W.3d at 634 (unlike permanent injunction, no underlying cause of action or liability required before trial court may grant family-violence protective order).

In addition, to the extent that Thoutam argues it is likely the extended families of this arranged marriage have already settled the dispute privately so it is unlikely future violence will occur, we again note that he does not point us to any authority to support this proposition, nor did we find any. Whether or not extended family

–10–

members have discussions or make arrangements is not an element of or a defense to a protective order under the Texas Family Code. Further, there is no evidence in the record supporting his contention that the dispute has already been settled. The only evidence with respect to the extended families meeting was Paramkusam's testimony that, in India, her family had met with Thoutam's family, but no petitions had been filed in India by her family against Thoutam and his family yet. Although Thoutam attempted to elicit more about their extended families' discussions during his cross-examination of Paramkusam, she stated that she did not have knowledge of certain things.[4]

Although one incident would be sufficient to support an inference that there is a likelihood of future family violence, in this case, Paramkusam testified to at least four separate incidents and a video recording of one of those incidents was admitted into evidence. *See Myers*, 2023 WL 415946, at *3. After considering all of the evidence, we conclude that it is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Accordingly, we conclude the evidence is factually sufficient to support the trial court's finding that Thoutam is likely to commit family violence in the future.

---

[4] Thoutam notes that in Paramkusam's testimony regarding the extended families' discussions, she denied that her family demanded a piece of property worth $350,000 on December 2 or a piece of property worth $150,000 on December 6. We interpret this reference to support his argument that the marriage is "a sham marriage, brokered for financial convenience." However, nothing in the Texas Family Code, nor any other authority we have found or that has been cited, indicates such evidence is relevant to the determination of whether Thoutam is likely to commit family violence in the future.

–11–

Issue one is decided against Thoutam.

### III.  VENUE

In issue two, Thoutam argues the evidence is insufficient to prove venue in Dallas County was proper.  Relying on criminal law, he argues that the harmful error analysis applicable to criminal cases does not apply to these facts such that the case should be reversed.  Paramkusam responds that Thoutam has failed to preserve this argument for appellate review.  She also contends that Thoutam relies on cases addressing venue in criminal cases that are not applicable to applications for protective orders, which are civil proceedings.  She also argues the evidence shows that she filed her application for protective order in Dallas County, which was the county where both she and Thoutam resided and where family violence was alleged to have occurred.

### *A.  Appliable Law*

Section 82.003 of the Texas Family Code addresses the appropriate venue for filing an application for a family-violence protective order: (1) the county in which the applicant resides; (2) the county in which the respondent resides; or (3) any county in which the family violence is alleged to have occurred.  TEX. FAM. CODE ANN. § 82.003.  Protective order proceedings are civil proceedings; they are not criminal or quasi-criminal proceedings.  *See Roper*, 493 S.W.3d at 638.  Texas Rule of Civil Procedure 86 provides that an objection to improper venue is waived unless

made by written motion prior to or concurrently with any other plea, pleading, or motion except a special-appearance motion.  TEX. R. CIV. P. 86.[5]

## B. *Thoutam Waived His Improper-Venue Complaint*

On December 28, 2021, Parakusam filed her application for a protective order.  The application states that Thoutam is a resident of Dallas County, and in her attached declaration, Paramkusam also lists the address of her apartment in Irving, Texas.  On January 13, 2022, after a hearing where Thoutam appeared by Zoom and requested a "rest," the trial judge signed an order extending the temporary ex parte protective order.  The trial court held a hearing on Paramkusam's application on February 1, 2022.  During her testimony, Paramkusam described Thoutam hitting and choking her in their apartment.  At the conclusion of the evidence, Thoutam objected to venue on the basis that there was no evidence the family violence occurred in Dallas County and the trial court responded that it had "jurisdiction."[6]

Objections to improper venue must be made at the outset of the case.  *See* TEX. R. CIV. P. 86.  However, the record does not show that Thoutam filed any

---

[5] Another court of appeals has questioned whether Rule 87 relating to determination of motion to transfer applies in context of motion to transfer venue to a court of continuing jurisdiction in suits affecting the parent-child relationship.  *In re Salgado*, 53 S.W.3d 752, 764 (Tex. App—El Paso 2001, orig. proceeding).  However, the Legislature created a specific statutory regime governing transfers in suits affecting the parent-child relationship, replacing the usual civil rules.  *See* TEX. FAM. CODE ANN. §§ 155.201–.207.  Chapter 85 of the Texas Family Code also contains a specific statutory regime for transferring protective orders, but only where there is a related suit for dissolution of marriage or suit affecting the parent-child relationship.  TEX. FAM. CODE ANN. § 85.064.  Since neither of those special cases are applicable here, we apply the normal civil rules.

[6] The State also argues that Thoutam did not object but rather asked a question and failed to obtain a ruling on his complaint.

–13–

objection to improper venue or otherwise contested venue in Dallas County before the hearing on Paramkusam's application. As a result, we conclude Thoutam did not timely challenge venue in the trial court or seek to transfer venue, waiving his venue challenge. *See id.*

Issue two is decided against Thoutam.

## IV. CONCLUSION

The evidence is factually sufficient to support the trial court's family-violence order of protection. Thoutam waived his complaint that venue was not proper in Dallas County.

The trial court's order of protection is affirmed.

220161f.p05

/Emily Miskel/

EMILY MISKEL
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RAKESH THOUTAM, Appellant

No. 05-22-00161-CV     V.

GEETANJALI PARAMKUSAM,
Appellee

On Appeal from the 302nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. CV21-00750.
Opinion delivered by Justice Miskel.
Justices Molberg and Pedersen, III
participating.

In accordance with this Court's opinion of this date, the trial court's protective order is **AFFIRMED**.

It is **ORDERED** that appellee GEETANJALI PARAMKUSAM recover her costs of this appeal from appellant RAKESH THOUTAM.

Judgment entered this 26th day of July 2023.