**Affirmed and Plurality and Concurring Opinions filed August 31, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00645-CV

---

## CRYSTAL DOLGENER, Appellant

### V.

## STEVEN DOLGENER, Appellee

---

**On Appeal from the 280th District Court
Harris County, Texas
Trial Court Cause No. 2019-27998**

---

## OPINION

Appellant Crystal Dolgener appeals a protective order entered in favor of her husband, appellee Steven Dolgener.[1] In eleven issues we have reorganized, Crystal argues: the evidence was legally and factually insufficient to support a finding that (1) Crystal committed family violence against Steven, (2) Crystal committed family violence against P.D., (3) Crystal committed family violence against the

---

[1] We will refer to individuals with the same last name by their first name.

parties' children thereby necessitating listing them as "protected persons," (4) Crystal was likely to commit family violence in the future; and the protective order court abused its discretion when it (5) awarded Steven exclusive possession of the parties' children and ordered supervised visitation for Crystal, (6) awarded Steven exclusive possession of the marital residence, (7) awarded Steven exclusive possession of the parties' vehicle, (8) awarded Steven attorney's fees, (9) signed an order releasing supersedeas funds deposited by Crystal to Steven's attorney, and (10) denied Crystal's motion to transfer the protective order. Crystal also raises an issue of due process, arguing (11) the trial court violated due process principles and abused its discretion by preventing Crystal from calling a witness at trial.[2] We affirm.

## I. BACKGROUND

During their marriage, Crystal and Steven had three daughters: L.D., S.D., and D.D.[3] Steven also has a son from a previous relationship, P.D. On January 11, 2019, Steven left the marital residence and separated from Crystal. On April 22, 2019, Steven filed an application for a protective order in the 280th Judicial District Court of Harris County against Crystal on behalf of himself and the four children. On April 23, 2019, Steven filed for divorce, and the case was assigned to the 245th Judicial District Court. In his live pleading, Steven alleged that Crystal "engaged in conduct that constitutes family violence as defined in [§] 71.004 of the Texas Family Code" against Steven and P.D., and that there was good cause for prohibiting Crystal from communicating with Steven and P.D., except through the parties' attorneys. *See* Tex. Fam. Code Ann. § 71.004. Steven also requested that

---

[2] Steven has not filed a brief to assist us in the resolution of this appeal.

[3] We use initials to protect the minor's identities. *See* Tex. R. App. P. 9.8 cmt.; *see also* Tex. Fam. Code Ann. § 109.002(d). At the time of trial, L.D., S.D., and D.D. were aged five, two, and one, respectively.

the trial court award him: exclusive possession of L.D., S.D., and D.D.; possession of the marital residence; possession of one of the community vehicles; and attorney's fees.

## A.  TRIAL[4]

Trial on the protective order began on June 24, 2019.[5] The trial court heard testimony from: the parties (Steven and Crystal); Crystal and Steven's neighbor (Joseph Heiliger); Steven's sister (Lisa Mulvaney); Steven's brother-in-law and Lisa's husband (Doug Mulvaney); a therapist (John Douglas Trani, Ph.D.); and on the issue of attorney's fees, Steven's attorney (Melissa Pickett).

### 1.  Evidence Presented by Steven

#### a.  Joseph Heiliger

Heileger testified that on January 5, 2019, while in his neighbor's driveway, he witnessed Crystal, in the front yard of the house with the children present, yelling at Steven and trying to stop Steven from leaving the house by standing in front of him and blocking him from getting into his car to leave.  Heiliger stated Crystal accused Steven of destroying and abandoning the family, while Steven was attempting to leave the house. While Steven and Crystal were arguing, P.D. walked down the street past Heileger's house and Steven followed him. Crystal re-arranged the vehicles to prevent Steven from leaving in the car. Heileger further testified that Steven went back to his house to attempt to retrieve some of his

---

[4] According to Crystal, she "also filed an [a]pplication for [p]rotective order against Steven [and] the two applications were heard by the 280th Judicial District Court at the same time." The reporter's record supports her contention; the trial court called cause no. 2019-35892 and the "companion case 2019-27998" to trial on June 24, 2019.

[5] We note that the cover page for some of the volumes of the reporter's record state that trial began on February 14, 2019. However, this date must be incorrect because the protective order was not filed until April 22, 2019. The remainder of reporter's record from the first day of trial indicates that trial began on June 24, 2019.

clothes and a bag, but he was not able to do so.

Heiliger testified to similar incidences of Steven and Crystal arguing outside in the yard, and stated he never saw Steven put his hands on Crystal but that he witnessed Crystal push Steven. Heiliger testified that, during the January incident, Steven seemed lucid and did not smell of alcohol.

### b.    Steven

Steven testified about incidents and altercations involving him and Crystal. In the summer of 2018, he and Crystal were arguing and Crystal punched Steven in the chest and shoulder area. Steven also testified about other incidents in 2018 when Steven tried to leave the house or go to work and Crystal prevented him from leaving by barricading herself against the door while holding the children or by hugging Steven and refusing to let go.

Steven testified that he left the residence he shared with Crystal on January 11, 2019. Steven testified that on the day before he left, Crystal was cussing and swearing from around 10:00 a.m. that day until 3:00 a.m. the next day. According to Steven, Crystal referred to P.D. and Steven by numerous derogatory and insulting terms. Steven testified that while their five-year-old daughter was in the room, P.D. turned off the light and Crystal turned the light back on, several times, and verbally threatened P.D. with physical harm if he turned his light off again. He stated he pleaded with Crystal to stop, but that Crystal continued yelling and screaming.

The next day Crystal continued her altercation with P.D., and Steven was "done." As P.D. came down the stairs, Crystal would not let him pass, and Steven "had to grab her again to move her to the side of the stairwell" so that P.D. could make it past Crystal. As Steven tried to leave, Crystal grabbed and tore his shirt

4

and started blocking the doors in an attempt to prevent him from leaving. After Steven managed to exit the house, Crystal told L.D. and S.D. that Steven was trying to leave, instructed them to sit on Steven's car, and Crystal stood behind the car, telling Steven to go back inside the house. At that point, Steven walked down the street to look for P.D. in an attempt to diffuse the situation.

On January 16, 2019, Steven agreed to meet Crystal at a Wal-Mart parking lot. As Steven approached Crystal's car, Crystal opened her car door, grabbed and twisted Steven's shirt, and began yelling and screaming at Steven, while their children were in the car. When Steven was able to walk away, Crystal repositioned her car to prevent Steven from getting into his car.

On January 27, 2019, Steven went out drinking with friends. At the end of the night, a friend got an Uber to take Steven to his sister's home, where Steven had been staying since his separation from Crystal. However, Steven fell asleep in the Uber and the driver took Steven to the address on his driver's license—the home he had shared with Crystal. Steven fell asleep in the house, and when he woke up, Crystal was hitting him and telling him to leave. Steven said Crystal punched him and hit him across the head and that one of his daughters witnessed Crystal striking him. Steven left in an attempt to prevent the children from seeing any further physical altercation.

At 6:30 a.m. on January 30, 2019, Steven sent an email to Crystal informing her that he was no longer going to direct deposit his checks into their bank account because Crystal had withdrawn "$2,500 or $2,700" that week and also two weeks prior. Crystal texted Steven 144 times and called him 123 times that day and filed a criminal assault charge against Steven that afternoon. Crystal continued to call and text Steven many times in the days that followed. On February 8, 2019, as a result of Crystal's criminal complaint, a no contact order was put in place, yet Crystal

continued to text and call Steven. Crystal texted Steven multiple times on February 8–11, 13, and 25–27. "And after 30 days of doing that, I think Crystal . . . went back up to the courthouse to amend the no contact [order]."

On April 14, 2019, Steven, his sister (Lisa), Lisa's husband (Doug), and his nephew went to play golf. That day, Crystal called Steven 121 times requesting that Steven meet with her. Crystal eventually went to the golf course with the girls in the car, and drove up to the car Steven was in, to pin him in. Crystal then rolled down her car windows, and yelled and screamed at Steven while the girls were in the back seat. The five-year-old child started crying.

Steven and his family members decided to have Steven and Crystal continue their conversation at the parking lot of a nearby police station,[6] where Crystal continued to yell and scream at Steven and call him derogatory and insulting names. Police officers approached their vehicles; Crystal accused Steven of drinking and driving and said she had been trying to find Steven all day.

On April 15, 2019, Steven met with Pickett and another attorney to pursue a divorce. While at the consultation with Pickett, Steven could not access his phone because Crystal was calling "almost every second for almost an hour or two."

On April 16, 2019, Crystal showed up at the restaurant where Steven worked part-time,[7] held onto to Steven, and refused to leave until she was informed by Steven's co-worker that their manager was calling the police. Steven then filed the underlying suit requesting a protective order.

Steven addressed Crystal's allegations of abuse by him. Specifically, Steven said he has been the cause of bruising on Crystal at times because he's had to

---

[6] Lisa and Doug described the parking lot as being adjacent to a court.

[7] Steven also works part-time as a realtor.

6

restrain her from attacking P.D. and move her out of the way. Steven explained that Crystal would scream at P.D. while standing right in front of P.D.

The trial court admitted into the record Steven's exhibits showing the voluminous records of Crystal's text messages between January 30, 2019, and June 15, 2019.[8] The exhibits show Crystal texted Steven repeatedly, often multiple times a minute, in an aggressive tone or an insulting manner. In particular, Crystal repeatedly accused Steven in the text messages of being abusive and an alcoholic.

### c. Lisa Mulvaney

Regarding the April 14, 2019, incident in the golf course parking lot, Lisa, Steven's sister, testified that Crystal called Steven constantly for three hours while they were playing golf, and then sped over to where they were, blocking Steven's car, and yelling and screaming profanities at Steven with Steven and Crystal's three daughters in the car.

Lisa testified she saw the sheriffs in the parking lot talking to Steven and Crystal while the children were in the car crying. The police officers told Lisa that Crystal told them that Steven had been driving around drunk. Lisa told the officers this was false because she had been with Steven for at least five hours and had not seen him drink.

Lisa testified that there were many times when Crystal called her home repeatedly, so much that they had to take their phone off the hook on several days. Lisa also testified that Crystal constantly called, emailed, and texted Steven, describing the numerous attempts at contact a "barrage." Lisa testified she did not think Steven had a drinking problem based on what she had observed since

---

[8] Approximately 500 pages of records of text messages between Steven and Crystal were admitted into evidence, with some pages containing as many as nineteen messages on a single page. With few exceptions, the text messages were sent by Crystal.

January. Lisa testified that Steven is not a violent or abusive person and that she did not think that Steven had a domestic violence issue towards Crystal. Finally, Lisa testified that Steven had been driving her and Doug's Lexus.

### d. Doug Mulvaney

Doug's testimony regarding the events that unfolded after the family members finished playing golf on April 14 was consistent with Lisa's testimony— Steven went golfing with Doug, Lisa, and their son; as they approached their cars when they were leaving, Crystal drove her vehicle towards them with the children in her car and blocked Steven from leaving; Crystal was yelling obscenities at Steven telling him to get in the car; the children were in Crystal's car and upset; they decided to drive Steven to a nearby courthouse so that Crystal and Steven could talk; Crystal alleged Steven was driving drunk; and Doug denied Crystal's allegation.

Doug never witnessed Steven act violent towards Crystal and never saw Crystal strike Steven, and he had not seen Steven drink "too much alcohol" in the five months since his separation from Crystal. Doug stated he witnessed ten or more incidents since January of 2019 where Crystal was screaming at Steven on the phone. Doug also testified regarding Crystal's repeated calls to their home phone.

Finally, Doug testified that Crystal sent him and Lisa pictures of bruises on her body and that he asked Steven about them. According to Doug, Steven told him that the bruises were defensive because Steven had to move Crystal when he was afraid Crystal would attack P.D. and when she was blocking the door crying and screaming while the girls were in another room.

8

### e. Melissa Pickett

Pickett, Steven's attorney, asked the court to order Crystal to pay $9,209 in reasonable and necessary attorney's fees and costs. On the last day of trial, Picket informed the court that she "spent an additional hour over the weekend in preparation and then have been at court for three hours," and increased the amount requested to $10,609.

### 2. Evidence Presented by Crystal

### a. Dr. John Douglas Trani

Dr. Trani testified he is a psychologist and that he began seeing Crystal and Steven about six or seven years prior to trial to assist them in their attempts to obtain custody of P.D. Dr. Trani testified about his observations regarding Crystal during the six months preceding trial and explained that Crystal is conflicted about her relationship with Steven, that Crystal gets "extremely angry" with Steven at times, and that Crystal's emotions at times are "extreme." Dr. Trani testified that, in the six months prior to trial, Crystal sent him pictures of bruises which Crystal alleged were caused by Steven and pictures of Steven "passed out from alcohol intoxication laying on the floor." Dr. Trani was previously unaware of such issues, and Crystal told him that "she did not in the past want anybody to know about any of this . . . because she was trying to protect him."

Dr. Trani testified he did not observe anything or know anything about Crystal that made him think she was a danger to her daughters. As to P.D., Crystal "would become extremely angry, yelling, you know, just the intensity of the anger was a ten on the scale of one to ten, but I don't think she would have ever hit him or done anything physical to him but, certainly, not to the girls." Dr. Trani did not think that Crystal was mentally unstable, but he agreed that a parent texting

9

someone 144 times in one day is an issue and that a child should not hear you screaming at your spouse. Dr. Trani never saw Steven scream at Crystal or witnessed anything to indicate that Steven was physically violent towards her, but Crystal had repeatedly talked about Steven's alleged abuse.

### b. Crystal

Crystal testified that she and Steven began dating after meeting ten years prior to trial. She stated that Steven has always been a heavy drinker. According to Crystal, she pushed Steven to reduce his drinking, but he did not. Crystal alleged that Steven was verbally and emotionally abusive because he would insult her and call her derogatory names when he was drunk.

Crystal testified that Steven sought to modify his custody of P.D. in November and December of 2018.[9] Crystal stated that the litigation caused Steven to drink more and the abuse happened more.

Crystal alleged the physical abuse first occurred one time at the beginning of their relationship," and occurred again after the birth of their our first child. Crystal stated Steven manhandled her, grabbed her forcefully, and choked her. The trial court admitted into evidence Crystal's pictures showing bruises on her body that were taken on different occasions, including when she was pregnant with their third child. Crystal stated that the bruises on her arm were as a result of Steven manhandling her and also alleged that Steven threw a box at her. Crystal testified that the last time Steven hurt her was on January 27, 2019—the night Steven was dropped off by Uber, at their home.

Crystal testified she let Steven into the house on January 27, that she could smell alcohol on him, and that Steven slurred his words. Crystal testified that

---

[9] Crystal also testified that initially sought custody of P.D. in 2015 from P.D.'s Mother.

Steven was grabbing her, and that she told him he needed to leave before the girls woke up. Crystal said she woke up and found Steven in a state of undress, and that Steven started to scare her and thought he might hurt her. She stated she had the front door open and was yelling for him to leave, and he was yelling and asking where his car and stuff were. She told him she did not know, and denied having Steven's wallet, keys, or cell phone. Crystal filed criminal charges against Steven three days later on January 30, 2019.

Crystal also disputed Steven's version of events of the 2018 incident in the car where Steven accused Crystal of hitting him. Crystal alleged that Steven was intoxicated at the time, that she was driving, that the girls were in the back of the car, and that Steven hit her with his "backhand." Crystal also denied grabbing Steven's shirt and twisting it at the Wal-Mart parking lot on January 16, 2019. As to the incident in the golf course parking lot, Crystal testified that Steven told her he was at the golf course and that she believed Steven was drinking, although she conceded she did not see him drink and did not smell alcohol on him. She explained her concern that day was that Steven was going to drink and drive.

According to Crystal, she blocked Steven's exit from their house "[s]o the children wouldn't see, so that he didn't leave and drive drunk in his car with him or with his son and also fighting desperately to save my marriage." Crystal testified Steven's testimony that her bruises were caused by him moving her out of the way was not accurate. Crystal testified she does not think it is abusive to keep someone from being able to leave their home, to keep someone from leaving their own bedroom, to block someone's car and keep them from leaving, to call someone hundreds of times, or to text someone repeatedly to answer the phone.

Crystal explained that her repeated text messages and phone calls were because "we have children together. He had taken all of the money. I needed help."

11

Crystal conceded that she had called Steven insulting and derogatory terms in 2019, but she denied that she was emotionally abusive to Steven and testified she did not think that calling Steven obscene and insulting terms numerous times repeatedly was emotionally abusive. Crystal accused P.D. of being abusive towards her.

Crystal testified about one of the videos admitted into evidence. In the video, Crystal is sitting in front of the bedroom door, and yelling and screaming at Steven to get her glasses. Crystal alleges that Steven ripped the glasses off her face and threw them across the room. In the video, Crystal accuses Steven of drinking, being verbally abusive, and hurting her wrist. In the video, Steven and Crystal argue and Crystal screams; Steven attempts to leave but Crystal blocks the door, preventing Steven from leaving. At trial, Crystal stated that, before the video was recorded, Steven came home and became enraged when she asked how much he had to drink, and choked her in front of their children. She also testified that he pinned her down and put his knee in her chest. Crystal alleged that Steven hit her on the head on January 5, 2019, and on January 10, 2019, became enraged and called her a derogatory name and hit her on the chest.

## B.    TRIAL COURT'S RULING

On July 23, 2019, the trial court signed a final protective order finding that Crystal committed family violence and family violence is likely to occur in the future. The Court further found that the protective order is "for the safety and welfare and in the best interest of [Steven] and other members of the family and [is] necessary for the prevention of family violence." The order defined "Protective Person" as: "[Steven], and [L.P., S.D., D.D., and P.D.]"

The court also awarded Steven exclusive possession of the children, the parties' residence and the parties' Chevrolet Traverse, and ordered that Crystal's

periods of possession be supervised, that she vacate the home, that she complete a psychological evaluation with a mental health professional, and that she pay $10,609 in attorney's fees to Pickett. The trial court's order prohibits Crystal, in relevant part, from: committing family violence; removing L.D., S.D., and D.D. from Steven's possession; communicating in any manner with Steven and P.D., except with Steven about their children's health, education, and activities; and going within 200 feet of the parties' residence, the school of any of the protected persons, and Steven's place of employment. The order states that "all relief requested in the Application for Protective Order but not expressly granted is denied" and was set to expire on July 22, 2021.[10]

## C.   EVENTS SUBSEQUENT TO THE TRIAL COURT'S RULING

### 1.   Motion to Transfer

On August 6, 2019, after the trial court signed the final protective order, Crystal filed in the 280th District Court, a motion to transfer the protective order to the 245th District Court. Crystal's motion states that: the protective order was rendered during the pendency of the divorce action in the 245th District Court and argued that: (1) the protective order would affect conservatorship, rights and duties, and support in the divorce matter; and (2) having all matters addressed by one court would be more convenient for the parties.[11] *See* Tex. Fam. Code Ann. § 85.064(a) (providing that a court may transfer a protective order if the transfer is in the interest of justice or for the safety or convenience of a party or witness). The 280th District Court denied the motion the same day.

---

[10] Generally, a protective order is effective for a period not to exceed two years. *See* Tex. Fam. Code Ann. § 85.025(a).

[11] Steven filed for divorce on April 23, 2019, the day after he filed for a protective order.

13

## 2. Notice of Appeal

On August 22, 2019, Crystal timely filed her notice of appeal.

## 3. Funds Deposited to Supersede Judgment

On September 17, 2019, Crystal filed a "Notice of Deposit in Lieu of Bond to Supersede Judgment."[12] The notice of deposit stated that Crystal deposited $11,188.80 with the Harris County District Clerk's Court Registry "to secure the judgment for attorney's fees awarded in this case while the case is pending appeal." *See* Tex. R. App. P. 24.1(a)(3), (c)(1); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 52.006(a), (b).

At a motion hearing on September 25, 2019, Steven asked the trial court "to consider whether [Crystal] has complied with the protective order, specifically, as to attorney's fees." Steven argued that Crystal "had filed a notice of lis pendens pending appeal for the attorney's fees" and that a lis pendens was "not proper" because "protective order attorney's fees are not like attorney's fees in a civil case." Steven asked the trial court "to find that [Crystal] is not in compliance and to either order her to comply with the payment of attorney's fees by a date certain and/or to order the District Clerk to release the funds that are held in the registry" of the court.

The trial court asked the parties to submit briefs on the issue. On November 20, 2019, the trial court signed an order releasing $10,834.27 of the funds to Pickett. *See* Tex. Fam. Code Ann. § 81.006(a) (providing that the amount of fees collected under this chapter as compensation for the fees of a private attorney "shall be paid to the private attorney").

---

[12] The body of this "notice" only sought to suspend "the sum of compensatory damages awarded in the judgment, interest for the estimated duration of the appeal, and costs awarded in the judgment."

## II.   MOOTNESS

We first address the issue of mootness, which we raise sua sponte. *See M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004) (per curiam) ("[W]e are obligated to review *sua sponte* issues affecting jurisdiction."). The protective order expired on July 22, 2021. Generally, mootness defeats a court's subject-matter jurisdiction over a particular controversy. *See Messier v. Messier*, 458 S.W.3d 155, 161 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Robinson v. Alief Indep. Sch. Dist.*, 298 S.W.3d, 324 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ("The mootness doctrine precludes a court from rendering an advisory opinion in a case where there is no live controversy."); *Thompson v. Ricardo*, 269 S.W.3d 100, 103 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("[I]f a judgment cannot have a practical effect on an existing controversy, the case is moot and any opinion issued on the merits in the appeal would constitute an impermissible advisory opinion.").

Nonetheless, the "collateral consequences" exception to the mootness doctrine allows an appellate court to review a case after it becomes moot. *Marshall v. Housing Auth. of the City of San Antonio*, 198 S.W.3d 782, 788–89 (Tex. 2006); *State of Protec. of Cockerham v. Cockerham*, 218 S.W.3d 298, 302–03 (Tex. App.—Texarkana 2007, no pet.). While a matter of first impression for this Court, other intermediary courts of appeal have concluded that, under the collateral-consequences exception, an expired protective order based on a finding of family violence is reviewable because the "effects of a protective order carry significant collateral legal repercussions and a social stigma . . . ." *Martin v. Martin*, 545 S.W.3d 162, 167 (Tex. App.—El Paso 2017, no pet.); *Clements v. Haskovec*, 251 S.W.3d 79, 84 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.); *Schaban-Maurer v. Maurer-Schaban*, 238 S.W.3d 815, 823 (Tex. App.—Fort Worth 2007, no pet.), *disapproved on other grounds by Iliff v. Iliff*, 339 S.W.3d 74, 83 (Tex.

15

2011); *Cockerham*, 218 S.W.3d at 303; *James v. Hubbard*, 21 S.W.3d 558, 660–61 (Tex. App.—San Antonio 2000, no pet.). We agree with the courts of appeal that have reviewed this issue and conclude that the collateral consequences exception applies to protective orders under Chapter 85 of the Family Code. *See* Tex. Fam. Code Ann. § 153.004(f) (mandating that a trial court must consider the issuance of protective order under Chapter 85, Title 4 of the Family Code in determining child custody); *Martin*, 545 S.W.3d at 167; *see also In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019) (per curiam). Because the protective order is based on allegations of abuse directed towards a spouse and children—allegations that carry significant legal repercussions and social stigma—Crystal is entitled to appellate review. *See Martin*, 545 S.W.3d at 167.

## III. EVIDENTIARY SUFFICIENCY

In her first issue, Crystal argues there was legally and factually insufficient evidence to support a finding that she committed family violence against Steven. In her second issue, Crystal argues the evidence was legally and factually insufficient to support a finding that she committed family violence against P.D. and that family violence was likely to occur against him in the future. In her third issue, Crystal argues that the evidence was legally and factually insufficient to support a finding that L.D., S.D., and D.D. were victims of family violence, and therefore, the trial court erred when it included them as "protected persons" under the order. In her fourth issue, Crystal argues the evidence was legally and factually insufficient to support a finding that she was likely to commit family violence in the future.

### A. APPLICABLE LAW

"A court shall render a protective order as provided by [§] 85.001(b) if the court finds that family violence has occurred and is likely to occur in the future."

16

Tex. Fam. Code Ann. § 81.001; *see id.* § 85.001(a) ("At the close of a hearing on an application for a protective order, the court shall find whether: (1) family violence has occurred; and (2) family violence is likely to occur in the future."). "Family violence" means:

(1) an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault or sexual assault, but does not include defensive measures to protect oneself;

(2) abuse, as that term is defined by [§] 261.001(1)(C), (E), (G), (H), (I), (J), (K), and (M), by a member of a family or household toward a child of the family or household; or

(3) dating violence, as that term is defined by [§] 71.0021.

*Id.* § 71.004; *see also id.* §§ 71.003 (defining "family"), 71.005 (defining "household").

A family member's actions can meet the definition of family violence if they involve a threat that reasonably places the other family member in fear of imminent harm. *Burt v. Francis*, 528 S.W.3d 549, 553 (Tex. App.—Eastland 2016, no pet.); *Boyd v. Palmore*, 425 S.W.3d 425, 430 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "Even in circumstances where no express threats are conveyed, the factfinder may nonetheless conclude that an individual was reasonably placed in fear." *Burt*, 528 S.W.3d at 553–54; *see also Wilmeth v. State*, 808 S.W.2d 703, 706 (Tex. App.—Tyler 1991, no pet.) (noting that even without verbal threats, a reasonable person may be placed in fear by a menacing glance and hand gesture). Intentionally or knowingly causing physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative also meets the statutory definition. *See* Tex. Fam. Code

17

Ann. § 71.004(1); Tex. Pen. Code Ann. § 22.01(a)(3) (defining assault). Given the remedial nature of the Family Code's protective order provisions, courts broadly construe its provisions to effectuate its humanitarian and preventative purposes. *Burt*, 528 S.W.3d at 553; *Boyd*, 425 S.W.3d at 430; *see Rodriguez v. Doe*, 614 S.W.3d 380, 685 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

## B. STANDARD OF REVIEW

We review the trial court's findings in a protective order proceeding that family violence has occurred and is likely to occur in the future for legal and factual sufficiency. *See Caballero v. Caballero*, No. 14-16-00513-CV, 2017 WL 6374724, at *3 (Tex. App.—Houston [14th Dist.] Dec. 14, 2017, no pet.) (mem. op) (reviewing findings of past family violence and of a likely occurrence of family violence in the future for legal and factual sufficiency); *Vongontard v. Tippit*, 137 S.W.3d 109, 113 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (same); *see also In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000) ("The abuse of discretion standard applies when a trial court has discretion either to grant or deny relief based on its factual determinations."); *but see Thompson v. Thompson O'Rear*, No, 06-03-00129-CV, 2004 WL 1243080, at *2 & n.1 (Tex. App.—Texarkana June 8, 2004, no pet.) (mem. op.) (acknowledging that other courts apply legal and factual sufficiency standard of review but applying abuse of discretion standard of review).

### 1. Legal Sufficiency

Evidence is legally sufficient if, viewing all the evidence in the light most favorable to the fact-finding and considering undisputed contrary evidence, a reasonable factfinder could form a firm belief or conviction that the finding was true. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). In conducting a legal-sufficiency review, the reviewing court cannot ignore undisputed evidence

18

contrary to the finding, but it must otherwise assume the factfinder resolved disputed facts in favor of the finding. *Id.* at 630–31.

### 2. Factual Sufficiency

In a factual sufficiency review, we examine the entire record and consider and weigh all the evidence, both in support of, and contrary to, the challenged finding. *See id.* Having considered and weighed all the evidence, we should set aside the judgment only if the evidence is so weak, or the finding so against the great weight and preponderance of the evidence, that it is clearly wrong and unjust. *Boyd*, 425 S.W.3d at 429 (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)); *see In re A.C.*, 560 S.W.3d at 631.

### C. ANALYSIS

We address the legal and factual sufficiency of the court's findings as to each individual named in the protective order in turn.

### 1. Steven

In her first issue, Crystal argues the evidence was legally and factually insufficient to support a finding that she committed family violence against Steven.

Here, the trial court heard the following testimony:

- Heiliger testified that Crystal pushed Steven when he was attempting to leave the house;

- Steven testified that Crystal punched him across his chest and shoulder area when they were arguing in their vehicle;

- Steven testified that Crystal "kept grabbing" him on the day he tried to leave the house, tearing his shirt, and that Crystal was "blocking the doors";

- Steven and Heiliger testified that Crystal blocked Steven's car when he attempted to leave the house;

- Steven testified that Crystal quickly grabbed his shirt "with two handfuls" and "twisted it" when they met at a Walmart parking lot, while "yelling and screaming" and while he told her to let go;

- Steven, Lisa, and Doug testified about Crystal confronting Steven at the golf court parking lot, and Steven testified she did so by "accelerat[ing] really fast" in her car and parking behind his car to "pin" him in;

- Steven testified Crystal texted him that she wished he would die; and

- Steven testified Crystal punched and hit him on the night when he was dropped off at the house by an Uber.

This legally sufficient evidence supports a finding that Crystal committed family violence against Steven. *See* Tex. Fam. Code Ann. § 71.004(1); *Boyd*, 425 S.W.3d at 430 (concluding that appellant committed act of family violence when he blocked appellee's car with his body and jumped on the hood of the car); *Clements*, 251 S.W.3d at 85–86 (concluding appellant committed act of family violence by raising his fist and making other threats though he never actually struck a family member); *see also Jackson v. Jackson*, No. 01-14-00952-CV, 2015 WL 8940117, at *4 (Tex. App.—Houston [1st Dist.] Dec. 15, 2015, no pet.) (mem. op.); *Valenzuela v. Munoz*, No. 01-12-0660-CV, 2013 WL 4678682, at *3 n.1 (Tex. App.—San Antonio Aug. 28, 2013, no pet.) (mem. op.) (noting that two discrete instances of actual physical contact between plaintiff and defendant was sufficient to support family violence finding, but noting that "other alleged actions that night, such as [defendant's] 'SWAT-style' sweep of [plaintiff's] home or attempt to take their son while intoxicated, would . . . also support a finding of family violence").

Crystal denied ever being abusive towards Steven and argued that her actions were fueled by her concerns regarding Steven's drinking and driving while intoxicated. However, the testimony from Heiliger, Steven, Lisa, and Doug

controverted Crystal's allegations that her behavior was in reaction to Steven's behavior. The trial court as the finder of fact was free to disbelieve Crystal's testimony regarding the basis for her actions and believe evidence to the contrary. *See Golden Eagle Archery, Inc v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). Having reviewed the record as a whole, we cannot conclude that a finding of family violence against Steven was so weak or so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Boyd*, 425 S.W.3d at 429. Therefore, we conclude the evidence is factually sufficient to support a finding that Crystal committed family violence against Steven. *See id.* at 433 (concluding evidence was factually sufficient notwithstanding defendant's denials and explanations as to his behavior).

We overrule Crystal's first issue.

## 2. P.D.

In her second issue, Crystal argues that there was insufficient evidence that she committed family violence against P.D. and that family violence was likely to occur against P.D. in the future. Therefore, Crystal argues, the trial court erred by including P.D. in the protective order.

First, we note that the trial court's order does not provide that it found that Crystal committed family violence against P.D.; rather, the order states "[t]he court finds that family violence has occurred and that family violence is likely to occur in the future." In other words, the order does not identify the individual or individuals against whom Crystal was found to have committed family violence. Nevertheless, Steven's petition alleges that Crystal committed family violence against Steven and P.D., not the other children.

Here, Steven testified that "there [have] been times when [Crystal] has been

21

aggressive with [P.D.] and I had to restrain her from pretty much attacking him," that Crystal threatened to knock P.D.'s teeth out, and that Crystal would "pin [P.D.] in a room and she will be within an inch of his face yelling and screaming at the top of her lungs and literally foaming at the mouth." Steven testified P.D. was "scared" during one of these interactions with Crystal. It is reasonable to infer from this testimony that Crystal placed P.D. in fear of imminent physical harm. *See* Tex. Fam. Code Ann. § 71.004(1); *Boyd*, 425 S.W.3d at 430.

Viewing this evidence in the light most favorable to the trial court's ruling, we conclude that the evidence was legally sufficient to support a finding that Crystal committed family violence against P.D. *See Clements*, 251 S.W.3d at 85 (affirming finding of family violence against husband even though husband had not physically struck his wife or daughter); *see also Pruneda v. Granados*, No. 01-20-00043-CV, 2021 WL 2231267, at *8 (Tex. App.—Houston [1st Dist.] June 3, 2021, no pet. h.) (mem. op.) ("[F]amily violence may exist not only in situations involving physical harm, but also in those where the family member subject to the protective order places another family member in 'fear of imminent physical harm.'").

We note that Dr. Trani testified he did not believe Crystal would be violent towards P.D., although he acknowledged she had extreme anger towards P.D. and that her anger towards P.D. was a ten out of one to ten. Crystal testified "[n]obody helped [P.D.] the way I did" and that P.D., "towards the end, was starting to be abusive to me, disrespectful to me." Specifically, Crystal alleged P.D. "wrestled" her to the ground, "shoved" her, and insulted her. As to the incident Steven testified about where Crystal cornered P.D. while she screamed, Crystal stated that P.D.'s "behavior was, again, out of control" and that Steven and P.D. "were both attacking me and I just kept asking, let me please go take a bath."

As the sole judge of the witnesses' credibility, the trial court was free to believe Steven and disbelieve Crystal, and we must defer to that determination. *See Golden Eagle Archery*, 116 S.W.3d at 761. Having reviewed the record as a whole, we cannot conclude that a finding of family violence against P.D. was so weak or so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. Therefore, we conclude the evidence is factually sufficient to support a finding that Crystal committed family violence against P.D. *See Boyd*, 425 S.W.3d at 433.

We overrule Crystal's second issue.[13]

### 3.    L.D., S.D., & D.D.

In her third issue, Crystal argues the evidence was legally and factually insufficient to support a finding that L.D., S.D., and D.D. were victims of family violence and that family violence was likely to occur against them in the future. As a result, Crystal argues, the trial court erred in including L.D., S.D., and D.D. as "protected persons" under the order and prohibiting Crystal from going to or near the residence and the children's school or childcare facilities. *See* Tex. Fam. Code Ann. § 85.022(b)(4) (allowing a court to prohibit a person subject to a protective order from "going to or near the residence, child-care facility, or school *of a child protected* under the order normally attends or in which the child normally resides") (emphasis added).

Here, the trial court's order provides:

The Court finds that family violence has occurred and that family violence is likely to occur in the future. The Court finds that Respondent, [Crystal], has committed family violence. The Court

---

[13] For the reasons explained in subsection 4, *infra,* we also reject Crystal's argument that the evidence was legally and factually insufficient to support a finding that violence was likely to occur against P.D. in the future.

finds that the following protective orders are for the safety and welfare and in the best interest of [Steven] and other members of the family and are necessary for the prevention of family violence.

. . . .

In this order, "Protected Person" means, [Steven], and [L.P., S.D., D.D., and P.D.]"

The trial court's order does not explicitly state that Crystal committed family violence against L.D., S.D., and D.D., and Steven did not allege in his petition that Crystal committed family violence against the girls. In essence, Crystal argues, the trial court must have found that family violence was committed against the girls because they are listed in the final protective order as "protected persons."

The Family Code provides that in instances of family violence "by a member of a family or household against another member of the family or household," "an adult member of the family or household may file an application for a protective order to protect the applicant *or any other member of the applicant's family or household.*" *See* Tex. Fam. Code Ann. §§ 71.004(1), 82.002(a). It is undisputed that L.D., S.D., and D.D. are members of Steven's family. *See id.* § 71.003, (defining family), *see also id.* §§ 71.005 (defining household), 71.006 (defining member of a household). Therefore, Steven was authorized to request that L.D., S.D., and D.D. be protected in the order, as he requested in his petition, without requesting that the court make a finding *as to family violence* against L.D., S.D., and D.D. Steven did not introduce any evidence of Crystal committing family violence against L.D., S.D., and D.D., and there was no testimony introduced during the protective order hearing to support a finding of family violence against L.D., S.D., and D.D.

We previously concluded that the evidence was legally and factually sufficient to find that Crystal committed family violence against Steven and P.D.

24

After the trial court made a finding of family violence against Steven and P.D., it was required to enter a protective order as provided by § 85.001(b). *See id.* § 81.001 ("A court shall render a protective order as provided in [§] 85.001(b) if the court finds that family violence has occurred and is likely to occur in the future."). Section 85.001 does not limit the protected persons listed under the order to solely the applicant or the individuals who suffered family violence. *See id.* § 85.001. This is because an applicant's family members may be at risk of suffering family violence as a result of their relationship to the applicant, even though they have not yet suffered harm. *See Martin*, 545 S.W.3d at 168. Therefore, we conclude that a trial court may list a child who is a family member of a victim of family violence as a protected person under the order, even if the child did not directly suffer family violence. *See* Tex. Fam. Code Ann. §§ 71.004(1), 82.002(a)(2); *Boyd*, 425 S.W.3d at 430 ("Given the remedial nature of Title IV of the Texas Family Code (of which the [provisions concerning protective orders] are a part), courts should broadly construe its provisions so as to effectuate its humanitarian and preventative purposes."); *see also* Tex. Fam. Code Ann. § 85.022(b)(3) (providing that a trial court "may prohibit the person found to have committed family from" "going to or near the residence, child-care facility, or school a child protected under the order normally attends or in which the child normally resides"). For these same reasons, we also reject Crystal's argument that a finding of future violence against L.D., S.D., and D.D. was a prerequisite to including them as a protected persons under the protective order.

Because there was no finding of family violence as to L.D., S.D., and D.D., we overrule Crystal's third issue.

### 4. Future Family Violence Finding

In her fourth issue, Crystal argues there is legally and factually insufficient

evidence to support the trial court's finding that "family violence is likely to occur in the future."

### a. Applicable Law

"The statutory language of [§ 85.001] does not require that a likelihood finding [of future family violence] be based on more than one act of family violence." *Boyd*, 425 S.W.3d at 432; *see* Tex. Fam. Code Ann. § 85.001. On the contrary, courts have recognized that oftentimes past is prologue; therefore, past violent conduct can be competent evidence which is legally and factually sufficient to sustain the award of a protective order. *Martin*, 545 S.W.3d at 168; *Boyd*, 425 S.W.3d at 432; *Clements*, 251 S.W.3d at 87; *see Teel v. Shifflett*, 309 S.W.3d 597, 604 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) ("The trial court reasonably could have concluded that future violence is likely to occur based on the testimony showing a pattern of violent behavior."); *In re Epperson*, 213 S.W.3d 541, 543–44 & n.3 (Tex. App.—Texarkana 2007, no pet.) (concluding that past and continuing pattern of behavior showed applicant was reasonable in fearing respondent would commit acts of "family violence" in the future). While a pattern of family violence is sufficient to support a likelihood finding, a pattern is not a necessary prerequisite to such a finding. *Boyd*, 425 S.W.3d at 432 n.3. "[A]n episode of family violence, coupled with continued harassment, permits an inference that family violence is likely to occur in the future." *Id.* at 432 n.2; *see also Teel*, 309 S.W.3d at 604 (concluding that evidence that parent engaged in abusive or neglectful conduct in the past permits an inference that the parent will continue this behavior in the future).

### b. Analysis

Here, there was sufficient evidence supporting a finding that Crystal committed family violence against Steven and P.D.

### i. Steven

The record indicates that Crystal often communicated with Steven by yelling, cursing, and repeating insults and derogatory accusations, both verbally and via text message, and that she also included Steven's family and other acquaintances in her communications. Crystal's tone and personal attacks escalated in tone and frequency until the protective order hearing, as evidenced by the testimony of the witnesses and the voluminous text-messages contained in the record.

The trial court could reasonably have concluded that violence was likely to occur in the future based on a pattern of violent behavior. *See Teel*, 309 S.W.3d at 604; *Martin*, 545 S.W.3d at 168; *Clements*, 251 S.W.3d at 87; *In re Epperson*, 213 S.W.3d at 544. Furthermore, Crystal denied the incidents occurred and that any of her actions were abusive, which the trial court was free to disbelieve. When there is no expression of remorse, a reasonable fact finder might also conclude that history will repeat itself. *See Martin*, 545 S.W.3d at 168. Likewise, Crystal's violations of the no contact order entered after she filed criminal charges against Steven supports an inference that Crystal presented a risk of future harm. *See Kuzbary v. Kuzbary*, No. 01-14-00457-CV, 2015 WL 1735493, at *6 (Tex. App.—Houston [1st Dist.] Apr. 13, 2015, no pet.) (mem. op.).

Despite Crystal's argument that her actions were fueled by a concern about Steven's drinking and potentially driving while intoxicated, there was evidence in the record that contradicted her testimony that Steven had a drinking problem and was frequently driving while intoxicated. Specifically, Heiliger testified he did not smell alcohol on Steven and that Steven was "very lucid" when he witnessed Crystal preventing Steven from leaving the house. Lisa and Doug testified that Steven did not have an alcohol problem and was not driving while intoxicated on

the day of the golf course incident, contrary to Crystal's allegations. Furthermore, in the videos in the record where Crystal is heard accusing Steven of drinking and of being an abuser, Steven is mild mannered and patient in responding to Crystal's aggressive and loud verbal attacks and accusations. Under the applicable standards of review, we conclude that the evidence is legally and factually sufficient to support a finding that Crystal is likely to commit family violence against Steven in the future. *See Teel*, 309 S.W.3d at 604; *see also Puente v. Puente*, No. 01-18-00583-CV, 2019 WL 3418510, at *5 (Tex. App.—Houston [1st Dist.] July 30, 2019, no pet.) (mem. op.) (concluding that evidence that respondent's behavior escalated over time and that applicant moved out of marital home because of fear of respondent, viewed in conjunction with evidence of past family violence, would allow a reasonable factfinder to conclude that future family violence was likely).

### ii.     P.D.

As to P.D., there was evidence that Crystal committed acts of family violence against him and had several angry outbursts towards P.D. Crystal did not deny these incidents. There was also evidence that Crystal harbored strong feelings of anger towards P.D., even after Steven and Crystal separated. Dr. Trani testified that he did not believe Crystal could be violent towards P.D., but he acknowledged that Crystal's anger towards P.D. was ten out of one to ten. Viewing the evidence in the light most favorable to the finding, we conclude there was legally sufficient evidence to support a finding that violence is likely to occur in the future. *See In re A.C.*, 560 S.W.3d at 630–31. Furthermore, having reviewed the record, we cannot conclude the finding was so weak or so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Boyd*, 425 S.W.3d at 429. Therefore, we conclude the evidence is factually sufficient.[14] *See id.* at 432–33;

---

[14] Crystal also argues that Steven no longer has custody of P.D. because he gave custody

*Teel*, 309 S.W.3d at 604; *Clements*, 251 S.W.3d at 87–88.

We overrule Crystal's fourth issue.

## IV.    AWARDS IN THE ORDER

In her fifth issue, Crystal argues the trial court abused its discretion when it awarded Steven exclusive possession of L.D., S.D., and D.D. and ordered her possession be supervised. In her sixth issue, Crystal argues the trial court abused its discretion when it awarded Steven exclusive possession of the marital residence. In her seventh issue, Crystal argues the trial court abused its discretion when it awarded Steven exclusive possession of the parties' Chevrolet Traverse.

### A.    STANDARD OF REVIEW

We review the prohibitions and awards entered in a protective order for an abuse of discretion. *See* Tex. Fam. Code Ann. §§ 85.021 (providing prohibitions a trial court *may* enter against any party to a protective order), 85.022(b) (providing prohibitions a trial court *may* enter in a protective order against the aggressor found to have committed family violence); *In re Doe*, 19 S.W.3d at 253 ("The abuse of discretion standard applies when a trial court has discretion either to grant or deny relief based on its factual determinations."); *Rodriguez*, 614 S.W.3d at 38 (noting that § 85.022(b) gives the trial court discretion to prohibit certain conduct). A trial court abuses its discretion if it acts arbitrarily or unreasonably or without reference to guiding rules or principles. *Flowers*, 407 S.W.3d at 457; *see Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam).

---

of P.D. back to P.D.'s mother. At trial, Crystal testified that Steven did not have custody of P.D. at that time because "he was giving [P.D.] back to save his marriage." Therefore, Crystal argues, "there is no reason to believe Crystal would have any interaction or involvement with P.D. in the future." We disagree. Future family violence against P.D. could still occur even if Steven does not have possession of him because Crystal could still seek out P.D. Furthermore, this does not preclude time when Steven may have visitation or possession of P.D., including at family events, such as birthdays, where P.D. could be present. Thus, we reject this argument.

**B.    APPLICABLE LAW**

"The scope of family violence protective orders will vary considerably depending on the circumstances." *Rodriguez*, 614 S.W.3d at 385. If the court finds that family violence has occurred and that family violence is likely to occur in the future, then the court shall render a protective order as provided by § 85.022, applying only to the person found to have committed family violence. *Id.* § 85.001(b)(1). In the protective order, the trial court may also impose prohibitions and awards, as provided by § 85.021, on any party, if the conditions are in the best interest of the person protected by the order or member of the family or household of the person protected by the order. *See id.* §§ 85.001(b)(2), 85.021. Section 85.021 provides that the trial court may:

(1) prohibit a party from:

   (A)    removing a child who is a member of the family or household from:

   (i)  the possession of a person named in the order; or

   (ii) the jurisdiction of the court;

   (B)    transferring, encumbering, or otherwise disposing of property, other than in the ordinary course of business, that is mutually owned or leased by the parties; . . .

(2) grant exclusive possession of a residence to a party and, if appropriate, direct one or more parties to vacate the residence if the residence

   (A) is jointly owned or leased by the party receiving exclusive possession and a party being denied possession;

   . . . .

(3) provide for the possession of and access to a child of a party if the person receiving possession of or access to the child is a parent of the child;

30

(4) require the payment of support for a party or for a child of a party if the person required to make the payment has an obligation to support the other party or the child; or

(5) award to a party the use and possession of specified property that is community property or jointly owned or leased property.

*Id.* § 85.021; *see id.* § 85.001(b)(2); *see also id.* § 85.003.

## C.   ANALYSIS

### 1.   Possession of L.D., S.D., and D.D.

In her sixth issue, Crystal argues the trial court abused its discretion when it awarded Steven exclusive possession during the pendency of the protective order of L.D., S.D., and D.D. and ordered that Crystal's supervision be supervised.

Under the Family Code, the trial court was authorized to "provide for the possession of and access to a child of a party if the person receiving possession of or access to the child is a parent of the child . . . ." *Id.* § 85.021(3). It is undisputed that Steven is a parent of L.D., S.D., and D.D. Steven's petition requests that the trial court grant him exclusive possession of the children. As noted, the trial court heard testimony that (1) the children were present on several occasions when Crystal yelled at Steven, used profanity and insults towards Steven, and became physically aggressive towards Steven; (2) Crystal called and texted Steven for hours when she was supposed to be caring for the children; and (3) Crystal at times used the children to prevent Steven from leaving.

There was evidence that the award of exclusive possession of L.D., S.D., and D.D. to Steven and the requirement that Crystal's possession be supervised was for the protection of the children. Section 85.021(3) of the Family Code allows the trial court to make a provision for "possession of and access to a child of a party if the person receiving possession of or access to the child is a parent of the

31

child." *Id.* Given this evidence, we cannot say the trial court acted arbitrarily or unreasonably or without reference to guiding rules or principles in awarding exclusive possession of the children to Steven and ordering Crystal's possession be supervised. *See id.* §§ 85.001(b)(2), 85.021(3); *see also Floyd v. Floyd*, No. 05-15-00997-CV, 2016, WL 4690030, at *3 (Tex. App.—Dallas Sept. 7, 2016, no pet.) (mem. op.); *Vives v. Gersten*, No. 05-13-01463-CV, 2014 WL 7498016, at *4 (Tex. App.—Dallas Dec. 29, 2014, no pet.) (mem. op.); *Maki v. Anderson*, No. 02-12-01463-CV, 2014 WL 7498016, at *4 (Tex. App.—Fort Worth Aug. 15, 2013, pet. denied) (mem. op.) (per curiam); *In re A.S.B.*, 2009 WL 2461286, at * 4.

We overrule Crystal's fifth issue.

## 2.     Possession of the Marital Residence

In her sixth issue, Crystal argues the trial court abused its discretion when it awarded Steven exclusive possession of the marital residence during the pendency of the protective order.

Under the Family Code, the trial court is authorized to "grant exclusive possession of a residence to a party and, if appropriate, direct one or more parties to vacate the residence if the residence . . . is jointly owned or leased by the party receiving exclusive possession and a party being denied possession . . . ." Tex. Fam. Code Ann. § 85.021(2)(A). It is undisputed that the residence is jointly owned by Crystal and Steven.

The trial court heard testimony that the house is where Steven, Crystal, and the children lived prior to Steven leaving the home. There was testimony that Steven left the residence because of Crystal's behavior. In an email sent to the parties' attorneys, the trial court stated, "Mom to vacate the home since dad will have the children and the children need to be in a stable place and not moved

32

around." Given the evidence presented to the trial court, it would be reasonable to award exclusive possession of the residence to Steven in light of the findings of family violence and the award to Steven of exclusive possession of L.D., S.D., and D.D.

Because the trial court was authorized by statute to add this condition to the protective order, and because there was evidence supporting its decision and a conclusion that the decision was in best interest of Steven and the children, we overrule Crystal's sixth issue. *See id.* §§ 85.001(b)(2), 85.021(2)(A); *see also Floyd*, 2016 WL 4690030, at *3; *Vives*, 2014 WL 7498016, at *4; *Maki*, 2014 WL 7498016, at *4.

### 3. Possession of the Vehicle

In her seventh issue, Crystal argues the trial court abused its discretion when it awarded Steven exclusive possession of the parties' Chevrolet Traverse during the pendency of the protective order.

The trial court was authorized to "award to a party the use and possession of specified property that is community property or jointly owned or leased property." Tex. Fam. Code Ann. § 85.021(5). Steven's petition includes a request that the trial court award him "the use and possession of one of the community property vehicles in the possession of" Crystal. It is undisputed that the Traverse is jointly owned by Crystal and Steven.

Crystal argues that "[t]he evidence showed that Steven had access to another vehicle and in fact had been driving another vehicle since January 2019." There was undisputed evidence that Lisa, Steven's sister, and her husband Doug, allowed Steven to use their vehicle. Further, there was evidence that Steven is the sole source of income for Crystal and the children, and that Steven worked two part-

time jobs, as a realtor and a waiter. Because Steven was awarded exclusive possession of L.D., S.D., and D.D., and was the sole source of income for the children, the trial court's award of the Traverse to Steven was not unreasonable, arbitrary, or without reference to guiding rules or principles. *See id.* §§ 85.001(b)(2), 85.021(5); *see also Floyd*, 2016 WL 4690030, at *3; *Vives*, 2014 WL 7498016, at *4; *Maki*, 2014 WL 7498016, at *4.

Crystal argues that the Traverse was "mostly for her" and that she "had always driven that vehicle." However, Crystal does not argue that the Traverse was her only means of transportation. We note that Crystal fails to acknowledge or mention in her brief that the couple also owned another vehicle, which, according to text messages admitted into evidence, was in Crystal's possession.

We overrule Crystal's seventh issue.[15]

---

[15] In a single sentence, Crystal states that the trial court did not award exclusive use and possession of any vehicle to either party "[i]n the trial court's original rendition." In support, Crystal points to a chain of email communications between the 280th District Court and Pickett and Marquis under the title "Status of Dolgener protective order rendition." In the emails, the trial court states that it "grants" Steven's application for a protective order, that it "denies" Crystal's application, and it provides some of the terms included in the signed final protective order. However, Crystal presents no citations to appropriate authority or argument challenging a discrepancy between the alleged rendition and the signed order. Therefore, Crystal's challenge, if any, to this award on the basis that the order signed did not comply with the court's "rendition" is waived. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *see, e.g.*, *West v. Triple B. Servs., LLP*, 264 S.W.3d 440, 456 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (concluding that sub-issue was inadequately briefed because appellant's brief contained "no argument, analysis, or legal authorities to support its assertion"). Furthermore, Crystal did not object to the entry of the final order on this basis. *See* Tex. R. App. P. 33.1(a)(1). Finally, the emails clarify that the court was still researching matters pertaining to requests in Steven's application; that it was still deciding matters, such as the issue of attorney's fees and possession of the home; and that a final order was yet to be drafted. In any event, rendition of a judgment occurs when the trial court officially announces its decision (1) in open court in a manner that objectively reflects its intention to render, or (2) by written memorandum filed with the clerk. *See Burns v. Bishop*, 48 S.W.3d 459, 465 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Here, the email communication was not an official announcement of the trial court's decision in open court, nor was it a written memorandum filed with the clerk. *See id.*

## V. ATTORNEY'S FEES

In her eighth issue, Crystal argues the trial court abused its discretion when it awarded attorney's fees to Steven because "there was no evidence presented as to Crystal's income and ability to pay the fees."

### A. Applicable Law & Standard of Review

The trial court "may assess reasonable attorney's fees against the party found to have committed family violence . . . as compensation for the services of a private or prosecuting attorney or an attorney employed by the Department of Family and Protective Services." Tex. Fam. Code Ann. § 81.005(a). "In setting the amount of attorney's fees, the court shall consider the income and ability to pay of the person against whom the fee is assessed." *Id.* § 81.005(b). We review the trial court's award of attorney's fees in a protective order proceeding for an abuse of discretion. *See Sylvester v. Nilsson*, No. 14-19-00901-CV, 2021 WL 970924, at *6 (Tex. App.—Houston [14th Dist.] Mar. 16, 2021, no pet.) (mem. op.)

"This court has held that [§] 81.005 'creates a divided burden of proof on the issue of the amount of attorney's fees to be assessed in a family violence protective order case.'" *Id.* at *8 (quoting *Ford v. Harbour*, No. 14-07-00832-CV, 2009 WL 679672, at *6 (Tex. App.—Houston [14th Dist.] Mar. 19, 2009, no pet.) (mem. op.)). Steven, as the applicant for a family violence protective order that included a request for attorney's fees, had the initial burden to request and provide competent evidence proving he incurred reasonable attorney's fees as a result of applying for

---

Crystal also argues that "[t]he trial court refused to hear testimony regarding Crystal's access to another vehicle, and effectively precluded her from offering evidence as to why she needed use of the Traverse." However, Crystal presents no argument or authority challenging this evidentiary ruling by the trial court. Therefore, this argument is also waived. *See* Tex. R. App. P. 38.1(i); *see, e.g.*, *West*, 264 S.W.3d at 456. Furthermore, even if the argument was not waived, the trial court would not have abused its discretion in awarding Steven the Traverse, even if Crystal needed use of the Traverse, for the reasons identified above.

and prosecuting his application for a protective order. *See* Tex. Fam. Code Ann. § 81.005(a); *Sylvester*, 2021 WL 970924, at *8. In response, Crystal was obligated to provide evidence addressing her ability to pay the attorney's fees sought by Steven. *See* Tex. Fam. Code Ann. § 81.005(b); *Sylvester*, 2021 WL 970924, at *8.

## B.    Analysis

In support of Steven's request for attorney's fees, Pickett testified Steven incurred $10,609 in reasonable and necessary attorney's fees as a result of her legal representation.

Because Crystal's burden under § 81.005(b) was not to deny the fees incurred by Steven, but to avoid being assessed some or all of those fees because of an independent reason—i.e., her inability to pay—the burden is in the nature of an affirmative defense. *See* Tex. Fam. Code Ann. § 81.005(a); *Sylvester*, 2021 WL 970924, at *8; *see also Ford*, 2009 WL 679672, at *6 (noting that this division of the burden of proof also makes logical sense because "it imposes the burden of proof on the party with the best access to the required information"). Therefore, Crystal, in seeking the trial court's denial of an attorney fee award to Steven, had the burden to come forward with evidence of her inability to pay. *See* Tex. Fam. Code Ann. § 81.005; *Sylvester*, 2021 WL 970924, at *8; *Ford*, 2009 WL 679672, at *6. However, as Crystal's argument on appeal concedes, she did not introduce any evidence of her income or inability to pay. As a result, we overrule her eighth issue.

## VI.    ATTEMPT TO SUPERSEDE THE ATTORNEY'S FEES AWARD

In her ninth issue, Crystal argues the trial court abused its discretion "by signing an order releasing supersedeas funds from the Harris County District Clerk's Court Registry." Crystal attempted to suspend the enforcement of the

award of attorney's fees to Steven by filing a "NOTICE OF DEPOSIT IN LIEU OF BOND TO SUPERSEDE JUDGMENT" along with $11,188.80.

## A.   APPLICABLE LAW

The purpose of a supersedeas bond is to preserve the status quo by staying the execution or enforcement of the judgment or order appealed from, pending the appeal. *Haedge v. Cent. Tex. Cattlemen's Assoc.*, 603 S.W.3d 824, 829 (Tex. 2020) (per curiam). Filing appellate security (1) assures the appellee that it will be able to collect the judgment if the case is affirmed on appeal and (2) abates the remedies for collecting the judgment during the appeal. *Hanna v. Godwin*, 876 S.W.2d 454, 456 n.3 (Tex. App.—El Paso 1994, no writ); *see Edlund v. Bounds*, 842 S.W.2d 819, 832 (Tex. App.—Dallas 1992, writ denied). While the appeal is pending, the trial court cannot release the bond. *See Muniz v. Vasquez*, 797 S.W.2d 147, 150 (Tex. App.—Houston [14th Dist.] 1990, no writ).

The amount of bond or deposit in lieu of bond required to suspend a judgment depends on the type of judgment. *See* Tex. R. App. P. 24.1, 24.2(a); *In re Sheshtawy*, 154 S.W.3d 114, 121 & n.58 (Tex. 2004) (orig. proceeding); *see also In re K.K.W.*, No. 05-16-00795-CV 2018 WL 1477533, at *3 (Tex. App.—Dallas Mar. 27, 2018, no pet.) (mem. op.); *Fuentes v. Zaragoza*, No. 01-16-00251-CV, 2016 WL 3023811, at *2 (Tex. App.—Houston [1st Dist.] May 26, 2016, no pet.) (mem. op.); *Kohannim v. Katoli*, No. 08-11-00155-CV, 2011 WL 2586779, at *2 (Tex. App.—El Paso June 29, 2011, no pet.) (mem. op.). "When the judgment involves the conservatorship or custody of a minor or other person under legal disability, enforcement of the judgment will not be suspended, with or without security, unless ordered by the trial court." Tex. R. App. P. 24.2(a)(4).[16]

---

[16] Upon a proper showing, an appellate court may also suspend enforcement of the judgment with or without security, when the judgment involves the conservatorship or custody of

37

**B.    ANALYSIS**

Here, the judgment involved the custody of minors: L.D., S.D., and D.D. Specifically, the protective order provided that: (1) Crystal is "[p]rohibited from removing [L.D.], [S.D.], [and D.D.] from the possession of STEVEN DOLGENER"; (2) Steven "is granted exclusive possession of the children: [L.D., S.D., and D.D.]. until further order of the family court and documentation from the mental health professional"; and (3) Crystal is granted supervised visitation of L.D., S.D., and D.D.

The protective order required Crystal to pay Steven's attorney's fees. *See id.* To suspend the enforcement of the judgment, Crystal had to obtain an order from the trial court suspending the enforcement of the judgment, rather than filing a bond or a deposit in lieu of bond. *See* Tex. R. App. P. 24.2(a)(4). Crystal did not do so. As a result, she did not supersede the protective order and the attorney's fee award associated with the order. *See id.*[17]

Crystal argues the trial court could not release the funds because a trial court may not, "as a matter of law, order supersedeas funds released from the Court Registry while a case is on appeal." *See Muniz*, 797 S.W.2d at 150 ("While the trial

---

a minor child. Tex. R. App. P. 24.2(a)(4); *see, e.g.*, *Marquez v. Marquez*, No. 08-12-00129-CV, 2012 WL 1555204, at *1 (Tex. App.—El Paso May 2, 2012, no pet.) (mem. op.) (per curiam).

[17] Crystal's arguments on appeal ignore Rule 24.2(a)(4) and instead rely on 24.2(a)(1). *See* Tex. R. App. P. 24.2(a)(1), (4). However, because the order here involved the custody of Crystal and Steven's minor children, the applicable rule is 24.2(a)(3). *See* Tex. R. App. P. 24.2(a)(3). For this reason, we reject Crystal's arguments categorizing attorney's fees as "costs." *See In re Skero*, 253 S.W.3d 884, 886–88 (Tex. App.—Beaumont 2008, orig. proceeding) (per curiam) (concluding that attorney's fees "are costs incidental to and of the same nature as the protective order remedy, and are a means for enforcement" and rejecting appellant's argument that Article I, § 18 of the Texas Constitution prohibits a contempt and commitment order based on the failure to pay an attorney's fees award in a protective order). Furthermore, we note that the conclusion in *Skero* contradicts the subsequent holding by the Texas Supreme Court that attorney's fees are neither compensatory damages nor costs. *See In re Nalle Plastics Fam. Ltd. P'ship*, 406 S.W.3d 168, 176 (Tex. 2013) (orig. proceeding).

court has limited jurisdiction under Tex. R. App. P. 47(k) during appeal as custodian of supersedeas funds set in either its court or the appellate court, the trial court has absolutely no authority to disburse those funds."). However, the funds at issue here did not supersede any judgment. Therefore, Crystal's funds were not "supersedeas funds"; rather, they were simply funds in the registry of the trial court.

Because the judgment was not superseded, we cannot conclude the trial court erred when it released funds to Pickett to satisfy the attorney's fees award. *See* Tex. Fam. Code Ann. § 81.006(a); Tex. R. Civ. P. 308; *In re Sheshtawy*, 154 S.W.3d at 118 ("[W]hen a final judgment is not superseded, not only does a trial court have 'jurisdiction to hear the motion to enforce its final judgment, despite the fact that the judgment ha[s] been appealed,' but '[a] trial court has an affirmative duty to enforce its judgment.'") (quoting *In re Crow-Billingsley Air Park, Ltd.*, 98 S.W.3d 178, 179 (Tex. 2003) (orig. proceeding) (per curiam)); *Buller*, 806 S.W.2d at 227 (concluding that independent executrix of estate could be ordered to turn over cash in her possession and owned by the estate as partial satisfaction of the bank's judgment against the estate); *Hamilton Metals*, 597 S.W.3d at 878–79; *see also In re Romero, Gonzalez & Benavides, L.L.P.*, 293 S.W.3d 662, 664 (Tex. App.—San Antonio 2009, orig. proceeding) ("Unless the judgment debtor files a supersedeas bond to delay the enforcement of the final judgment, the trial court has no discretion to suspend the enforcement of the final judgment pending appeal."); *Tex. Emp'rs Ins. Ass'n v. Engelke*, 790 S.W.2d 93, 95 (Tex. App.—Houston [1st Dist.] 1990, orig. proceeding) ("A judgment creditor has a statutory right to have execution issued to enforce a judgment pending appeal, unless and until a valid supersedeas bond has been filed.").

We overrule Crystal's ninth issue.

## VII.    MOTION TO TRANSFER

In her tenth issue, Crystal argues the trial court abused its discretion "by failing to hear" Crystal's post-judgment motion to transfer the final protective order from the 280th District Court to the court where the petition for divorce was filed—the 245th District Court. Specifically, Crystal argues that "[t]he trial court's refusal to permit a hearing on Crystal's [m]otion to [t]ransfer [p]rotective [o]rder was arbitrary, unreasonable, disregarded legal principles, and was done without any supporting evidence." Crystal further argues that "[t]he failure to permit a hearing on the motion to transfer, and to ultimately, transfer the protective order to the 245th District Court, created a conundrum for the parties." Specifically, Crystal argues:

> the 245th Judicial District Court's temporary orders rendition is completely contrary to the protective order in that it grants sole managing conservatorship of the children to Crystal and awards her exclusive use and possession of the marital residence and the Chevrolet Traverse.

This is an issue of first impression for this Court.

### A.    APPLICABLE LAW & STANDARD OF REVIEW

> If a protective order was rendered . . . while [a suit for dissolution of marriage] is pending as provided by [§] 85.062, [then] the court that rendered the order may, on the motion of a party or on the court's own motion, transfer the protective order to the court having jurisdiction of the suit if the court makes the finding prescribed by [§ 85.064(c)].

Tex. Fam. Code Ann. § 85.064(a). A court may transfer a protective order under § 85.064(a) if the court finds that the transfer is: (1) in the interest of justice, or (2) for the safety and convenience of a party or witness. *Id.* § 85.064(c). The provision is not mandatory. *In re Compton*, 117 S.W.3d 548, 550 (Tex. App.—Texarkana 2003, orig. proceeding); *see* Tex. Fam. Code Ann. § 85.064(a). "A protective order

40

that is transferred is subject to modification by the court that receives the order to the same extent modification is permitted under Chapter 87 [of the Family Code] by a court that rendered the order." *See* Tex. Fam. Code Ann. § 85.065(c). We review the trial court's ruling on a motion to transfer under § 85.064 for an abuse of discretion. *See In re Doe*, 19 S.W.3d at 253; *In re Salgado*, 53 S.W.3d 752, 764 (Tex. App.—El Paso 2001, no pet.) (combined appeal & original proceeding).

## B. ANALYSIS

Crystal cites no authority in support of her contention that the trial court was required to hold a hearing on her motion to transfer, including citation to any local rules on setting a hearing. Further, there is no requirement in the Family Code that the trial court conduct a hearing on a motion to transfer a protective order filed pursuant to § 85.064(a). *See* Tex. Fam. Code Ann. § 85.064; *cf. id.* §§ 83.004 ("On the filing of the motion to vacate, the court shall set a date for hearing the motion as soon as possible."), 84.001(a) ("On the filing of an application for a protective order, the court shall set a date and time for the hearing . . . ."); *see also Martinez v. Flores*, 820 S.W.2d 937, 938 (Tex. App.—Corpus Christi–Edinburg 1991, orig. proceeding) (concluding that the transfer procedures in the Family Code governing suits affecting the parent-child relationship are the exclusive mechanism for transferring the case or challenging venue and were designed to supplant the regular rules dealing with transfer of venue applicable in ordinary civil cases). Therefore, we reject the argument that the trial court erred by not holding a hearing.

As to Crystal's argument that the trial court erred in denying her motion, we note that the statute provides that it is within the trial court's discretion to transfer the protective order. *See* Tex. Fam. Code Ann. § 85.064; *In re Compton*, 117 S.W.3d at 550–51 ("By statute, the Smith County court could transfer the

41

protective order action to the Hunt County court, but the transfer is not mandatory."). Crystal argues that the trial court abused its discretion because the "245th Judicial District Court's temporary orders rendition is completely contrary to the protective order in that it grants sole managing conservatorship of the children to Crystal and awards her exclusive use and possession of the marital residence and the Chevrolet Traverse." *See In re Salgado*, 53 S.W.3d at 764–65 (discussing the problematic consequences of this statutory construct which allows for conflicting orders). Although the docket sheets from the 245th District Court are part of the record on appeal, the temporary orders referred to by Crystal are not part of our appellate record. The docket entry for November 19, 2019, states the 245th District Court ruled on temporary orders and appointed Crystal as sole managing conservator of L.D., S.D., and D.D., appointed Steven as possessory conservator, and awarded Crystal the exclusive use of the Traverse.[18]

Here, the record before the protective-order court showed that Crystal made serious accusations about Steven concerning alcohol and abuse to his family members and acquaintances, their therapist, and the protective-order court itself, but offered little substantiation for her repeated claims of serious abuse and alcohol consumption. Rather, Crystal's behavior and communications with Steven, as evidenced in the record, support an inference that these accusations, while perhaps not totally unfounded or false, were part of Crystal's escalating attacks and threats against Steven. Therefore, we cannot conclude that the denial of the motion to transfer was unreasonable or arbitrary. *See Flowers*, 407 S.W.3d at 457.

The statutory scheme recognizes that a protective order action and a divorce proceeding may proceed simultaneously. *See* Tex. Fam. Code Ann. §§ 85.061 ("If

---

[18] A spouse can request temporary orders for his or her protection, for a child's safety and welfare, or for the preservation of property either with or after the filing of a suit for the dissolution of marriage. *See* Tex. Fam. Code Ann. §§ 6.502, 6.709, 105.001, 109.001.

an application for a protective order is pending, a court may not dismiss the application or delay a hearing on the application on the grounds that suit for dissolution of marriage or suit affecting the parent-child relationship is filed after the date the application was filed."), 85.062 (providing for the application for a protective order when a suit for dissolution of marriage or suit affecting the parent-child relationship is pending); *In re Compton*, 117 S.W.3d at 551. However, Title Four of the Family Code does not currently contain a provision resolving conflicts between a final protective order and a temporary order entered by the divorce court. *See In re Salgado*, 53 S.W.3d at 761. While the denial of the motion to transfer can result in conflicting orders, we are bound by the statutes passed by the legislature. *See In re Corral-Lerma*, 451 S.W.3d 385, 387 (Tex. 2014) (orig. proceeding) (per curiam) ("It is the legislature's prerogative to strike that balance and our duty to enforce the statute as we find it."); *In re Salgado*, 53 S.W.3d at 762 ("While it does not appear that all of the legislative glitches have been resolved satisfactorily, we decline the invitation of both Salgado and Nunez to impose our own solution by legislating from the bench."). We are, however, mindful that conflicting orders, without statutory guidance as to which order controls, is a regrettable and unfair result to the parties and the children affected by these orders, and causes confusion and delay to the courts. We therefore encourage the legislature to remedy this conflict.

We overrule Crystal's tenth issue.

## VIII. DUE PROCESS

In her eleventh issue, Crystal argues "[t]he trial court violated principles of due process and abused its discretion by disallowing Crystal from calling witnesses in her case in chief."

We review the trial court's ruling on the admissibility of evidence for an

abuse of discretion. *Mega Child Care, Inc. v. Tex. Dep't of Protective & Regul. Servs.*, 29 S.W.3d 303, 308 (Tex. App.—Houston [14th Dist.] 2000, no pet.). We review de novo a properly preserved claim that a party was deprived of a constitutional right. *Joseph v. Jack*, 624 S.W.3d 1, 11 (Tex. App.—Houston [1st Dist.] 2021, no pet.). However, Crystal did not object to the exclusion of Gauze's testimony during the hearing on the protective order or advance any due process argument. Thus, this argument has been waived. *See* Tex. R. App. P. 33.1(a); *see also Lee v. City of Houston*, No. 14-05-00366-CV, 2006 WL 2254401, at *3 (Tex. App.—Houston [14th Dist.] Aug. 8, 2006, pet. denied) (mem. op.) ("Courts, including this one, have held that a party must present due process arguments to the trial court to pursue them on appeal.").

Crystal's eleventh issue is overruled.

## IX.    CONCLUSION

Having overruled all of Crystal's issues on appeal, we affirm the trial court's judgment.

/s/      Margaret "Meg" Poissant<br>Justice

Panel consists of Justices Spain, Hassan, and Poissant. (Spain, J., concurring, joined by Hassan, J.).

Publish — Tex. R. App. 47.2(b).